**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION**

| | | |
|---|---|---|
| BRITTNEY STOUDEMIRE, AMANDA VOSE, LUCINDA JACKSON, DANA FOLEY, DOUGLAS CASTLE and BARBARA GRAZIOLI , | ) ) ) ) ) | Civil No. 3:22-cv-00086-SHL-SBJ |
| Plaintiffs, | ) ) ) | **LEE ENTERPRISES' BRIEF IN** |
| vs. | ) ) ) | **SUPPORT OF ITS RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS** |
| LEE ENTERPRISES, INCORPORATED, | ) ) ) | |
| Defendant. | ) ) | |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  STATUTORY PURPOSE AND CONTEXT ............................................................ 4

   A.   The VPPA .......................................................................................................... 4

   B.   Facebook Users Data Sharing and The Facebook Pixel ............................... 6

III. Plaintiffs' Allegations ...................................................................................... 9

   A.   Lee Enterprises' Alleged Violation of the VPPA ........................................... 9

   B.   The Complaint Fails to Identify Any Specific Videos Requested or
      Watched by Plaintiffs ...................................................................................... 10

   C.   Plaintiffs Fail to Allege any Harm ................................................................. 10

IV.  Legal Standards ................................................................................................ 10

   A.   Federal Rule of Civil Procedure 12(b)(1) ..................................................... 10

   B.   Federal Rule of Civil Procedure 12(b)(6) ..................................................... 11

V.   LEGAL ARGUMENT ........................................................................................ 12

   A.   Plaintiffs Lack Article III Standing Because They Have Failed to
      Adequately Allege a Concrete Injury ............................................................ 12

   B.   Plaintiffs Have Failed to Plausibly Allege the Essential Elements of a
      Cognizable VPPA Claim .................................................................................. 15

      1.   Plaintiffs fail to allege that Lee Enterprises knowingly translated a
         Facebook UID to associate any Plaintiff with specific video materials
         viewed on a website. ................................................................................. 16

      2.   Plaintiffs' VPPA claim fails because an "ordinary person" cannot
         readily identify any of the Plaintiffs using the Facebook UID
         allegedly disclosed 8by Lee Enterprises. .................................................. 18

      3.   Plaintiffs fail to allege that Lee Enterprises disclosed the specific
         video materials or services they actually viewed or requested. ............... 21

VI.  CONCLUSION .................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*,
  645 F.3d 954 (8th Cir. 2011) ................................................................. 10

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500, 126 S. Ct. 1235 (2006) .................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .............................. 11, 14

*Auer v. Trans Union, Ltd. Liab. Co.*,
  902 F.3d 873 (8th Cir. 2018) .......................................................... 11, 14

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007) ................................................... 14

*Certon Software, Inc. v. EaglePicher Techs., LLC*,
  4 F.4th 615 (8th Cir. 2021) ............................................................. 11

*City Union Mission, Inc. v. Sharp*,
  36 F.4th 810 (8th Cir. 2022) ............................................................ 12

*Eichenberger v. ESPN*,
  876 F.3d 979 (9th Cir. 2017) .................................................. 2, 3, 19, 21

*In re Hulu Privacy Litig.*,
  2012 WL 3282960 (N.D.Cal. Aug. 12, 2012) .............................................. 6

*In re Hulu Privacy Litig.*,
  86 F. Supp. 3d 1090 (N.D. Cal. 2015) ................................................ 1, 16

*In re Nickelodeon Consumer Privacy Litig.*,
  No. 2443 (SRC), 2014 U.S. Dist. LEXIS 91286 (D.N.J. July 2, 2014) ..................... 5

*In re: Nickelodeon Consumer Privacy Litigation*,
  827 F.3d 262 (3d Cir. 2016) ........................................................*passim*

*Ojogwu v. Rodenburg Law Firm*,
  26 F.4th 457 (8th Cir. 2022) .............................................. 12, 13, 14, 15

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*,
  651 F.3d 857 (8th Cir. 2011) ............................................................ 18

- ii -

*Robinson v. Disney Online,*
   152 F. Supp. 3d 176 (S.D.N.Y. 2015) ...................................................................... 17

*Schulte v. Conopco, Inc.,*
   997 F.3d 823 (8th Cir. 2021) .................................................................................. 11

*Schumacher v. SC Data Center, Inc.,*
   33 F.4th 504 (8th Cir. 2022)................................................................... 12, 13, 14

*Spokeo, Inc. v. Robins,*
   578 U.S. 330, 136 S. Ct. 1540 (2016) ............................................................. 11, 12

*TransUnion LLC v. Ramirez,*
   141 S. Ct. 2190 (2021) .......................................................................... 3, 4, 12, 13

## Statutes

10 U.S.C. §949p-5 ................................................................................................... 18

15 U.S.C. § 1681b(2)(A) ......................................................................................... 14

15 U.S.C. §6821(a) ................................................................................................... 18

15 U.S.C. § 1692c(a)(2) ............................................................................................ 13

18 U.S.C. App. 3 §5 ................................................................................................. 18

18 U.S.C. §§ 2710 *et seq.* .................................................................................*passim*

18 U.S.C. § 2710(a)(3) ............................................................................. 1, 4, 17, 18

18 U.S.C. § 2710(a)(4) ............................................................................................... 5

18 U.S.C. § 2710(b) ................................................................................................... 5

18 U.S.C. § 2710(b)(1) ....................................................................................... 1, 16

18 U.S.C. § 2710(c)(2) ............................................................................................... 6

## Other Authorities

Fed. R. Civ. P. 12(b)(1)............................................................................ 4, 10, 11, 15

Fed. R. Civ. P. 12(b)(6).................................................................................... 11, 16

Fed. R. Civ. P. 12(h)(3) ............................................................................................ 11

S.Rep. No. 100–599 ................................................................................................ 4, 5

## I.    INTRODUCTION

In 1988, Congress passed the Video Privacy Protection Act ("VPPA") in reaction to a news report detailing the movies that then Supreme Court nominee Robert Bork and his family had rented from a local video store.  Through the VPPA, Congress decided that "[a] video tape service provider who ***knowingly discloses***, to any person, ***personally identifiable information*** concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection [(c)]."  18 U.S.C. § 2710(b)(1) (emphasis added).  Congress then defined personally identifiable information ("PII") to include the knowing disclosure of "information which identifies a [specific] person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).  Thus, to bring a cognizable claim for a violation of the VPPA, a plaintiff must allege facts establishing that a video tape service provider knowingly disclosed: "1) a consumer's identity; 2) the identity of 'specific video materials'; and 3) the fact that the person identified 'requested or obtained that material.'"  *See In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015).  Plaintiffs have failed to allege plausible facts to establish any of these elements to pursue their sole claim of a VPPA violation.  Therefore, their Complaint should be dismissed as a matter of law.

Specifically, Plaintiffs fail to allege that Defendant Lee Enterprises ("Lee Enterprises") knowingly transferred any data in its possession that (1) identified any Plaintiff and (2) disclosed specific video materials requested or viewed by a

Plaintiff, (3) to a third party (here Facebook, now known as Meta).  Instead, Plaintiffs allege their identities are transferred in the form of a series of numbers embedded in a Facebook Cookie, referred to as a Facebook User ID ("Facebook UID"), that is created by Facebook and installed on Plaintiffs' web browsing devices by Facebook.  There is no allegation that Lee Enterprises links an individual consumer's identity to the Facebook UID embedded in the Facebook Cookie, or otherwise uses the Facebook Cookie to extract the identity of a specific consumer to convey it to a third party.

Nor does the alleged software code that Lee Enterprises allegedly transmits to Facebook through use of the Facebook Pixel (now known as the Meta Pixel), include the type of information that constitutes PII under the VPPA.  Both the Third Circuit, in *In re: Nickelodeon Consumer Privacy Litigation*,[1] and Ninth Circuit, in *Eichenberger v. ESPN*,[2] recognize that in order to constitute PII under the VPPA, the information disclosed must be the type that would readily permit an "ordinary person" to identify a specific individual's video-watching behavior, without the need to combine it with other information in the recipient's possession. A simple review of the software code screenshots that are cited in the Complaint demonstrates that the code is meaningless to an "ordinary person" without reference to multiple articles, policies, technical know-how and access to a specific tool to obtain and translate it.

---

[1] 827 F.3d 262 (3d Cir. 2016).
[2] 876 F.3d 979 (9th Cir. 2017).

More importantly, the VPPA is concerned with "what information a video service provider *discloses*, not [] what the recipient of that information decides to do with it." *Eichenberger* at 985 (emphasis added). Again, Plaintiffs do not allege that Lee Enterprises has translated this code to link it with any specific person and transmitted that translation to Facebook. Accordingly, because the information allegedly transmitted by the Facebook Pixel is not the type that would permit an ordinary person to identify a specific individual or actual videos requested or watched without reference to other information technical know-how, and access to a specific tool to access and translate the code, the VPPA claim fails as a matter of law.

The VPPA claim also must be dismissed because there are no allegations in the Complaint that Lee Enterprises disclosed a specific video that any Plaintiff actually requested or watched. While Plaintiffs allege generally that they watched videos, the Complaint does not identify the specific videos each Plaintiff allegedly requested or watched. By not identifying the specific video materials viewed by each Plaintiff and allegedly sent to Facebook, Plaintiffs' VPPA claim fails as a matter of law.

However, the Court need not address these pleading deficiencies in the Complaint, because Plaintiffs cannot meet the Article III standing requirements to pursue this VPPA claim in federal court. Specifically, Plaintiffs fail to plausibly allege any cognizable injury. As the U.S. Supreme Court's decision in *TransUnion*

*LLC v. Ramirez*[3] made clear, alleging a statutory violation alone, without any mention of an injury, let alone a concrete one, fails to demonstrate Plaintiffs have standing to pursue their claim.  As Plaintiffs have not alleged any injury, Fed. R. Civ. P. 12(b)(1) requires dismissal of the Complaint.

## II.     STATUTORY PURPOSE AND CONTEXT

### A.     The VPPA

The VPPA was adopted after the 1987 confirmation hearings concerning Judge Robert Bork's nomination to the United States Supreme Court.  *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016).  While Judge Bork's nomination was being considered, the *Washington City Paper* published an exposé disclosing 146 movies that Judge Bork and his family rented from a local video store.  *Id.* at 278.  Members of the Judiciary Committee decried the publication and within one year Congress passed the VPPA, recounting the Bork disclosure and recognizing "[t]he bill ***prohibits video stores*** from disclosing "personally identifiable information".  S. Rep. 100–599, at 7 (emphasis added).  Congress then defined PII to require disclosure to include "information which identifies a [specific] person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).

The Senate Report accompanying the bill discusses the scope of PII under the VPPA, and emphasizes the legislation's goal of preventing the dissemination of specific videos viewed by specific identifiable individuals:

---

[3]141 S. Ct. 2190 (2021).

> This definition [of PII] makes clear that personally identifiable information is intended to be transaction oriented. It is information that ***identifies a particular person as having engaged in a specific transaction*** with a [video tape service provider] . . .. Thus, for example, a video tape service provider is not prohibited from responding to a law enforcement agent's inquiry as to whether a person patronized a [video tape service provider] at a particular time or on a particular date.

*In re Nickelodeon Consumer Privacy Litig.*, No. 2443 (SRC), 2014 U.S. Dist. LEXIS 91286, at *37-38 (D.N.J. July 2, 2014) (emphasis added).  At the time of its adoption, Congress also discussed the meaning of a "video tape service provider," which under the VPPA means "any person, engaged in the business . . . of rental, sale or delivery of prerecorded video cassette tapes or similar audio-visual materials."  18 U.S.C. § 2710(a)(4).  Congress explained the phrase "similar audio-visual materials" was intended to include technologies such as "laser discs, open-reel movies, and CDI Technologies."  *See* S.Rep. No. 100–599 at 12.  There is nothing in the legislative history to suggest the VPPA was intended to govern news media organizations, which is notable because the origin for the legislation was the publication of Judge Bork's video rental history by a newspaper.

As codified, the VPPA prevents a "video tape service provider" from "knowingly" disclosing "personally identifiable information" about one of its consumers "to any person," where that information discloses the consumer "requested or obtained specific video materials."  18 U.S.C. § 2710(b).  In other words, the VPPA was intended to protect an individual from having Blockbuster disclose whether that individual rented *Field of Dreams*, not whether that

individual entered the store and browsed the inspirational drama aisle but did not rent or watch a video.[4]

If there is a knowing disclosure of PII in violation of the VPPA, an individual can recover "actual damages but not less than liquidated damages in an amount of $2,500", along with punitive damages, reasonable attorneys' fees and costs and preliminary or injunctive relief.  18 U.S.C. § 2710(c)(2).

### B.    Facebook Users Data Sharing and The Facebook Pixel

Relevant to this case is how Facebook users (i.e., Plaintiffs) allow websites to track their third-party web browsing activity (i.e., their "off Facebook activity"), using the Facebook tracking technology that allegedly shares a Facebook user's information with Facebook.  *See* Complaint, ¶¶ 4, 46-68.  Importantly, the only information that allegedly identifies a specific individual at issue in this case is a Facebook User ID ("Facebook UID"), which is a series of numbers that are embedded into a Facebook Cookie that Facebook installs on each Facebook user's device when the user logs into Facebook.  *See* Complaint ¶ 44, n. 14 (*Privacy Center: Cookie Policy,* Facebook [http://www.facebook.com/policy/cookies (last visited Mar. 29, 2023)](http://www.facebook.com/policy/cookies)) attached as Exhibit A at 2.  There are no allegations in the Complaint that Lee Enterprises creates the Facebook Cookie, installs it on any of the Plaintiffs'

---

[4]To be clear, Lee Enterprises is not suggesting that the VPPA only applies to brick-and-mortar video stores.  The VPPA has been found to apply to video streaming services (i.e., entities whose purpose is to sell or rent videos).  *See In re Hulu Privacy Litig.,* 2012 WL 3282960, at *8 (N.D.Cal. Aug. 12, 2012).  However, in order to state a valid claim, a plaintiff must allege more than a visit to a streaming service website to see the offerings.  *See id.* ("Plaintiffs pleaded more than just visiting Hulu's website. They were subscribers of goods and services").

devices, or translates the Facebook Cookie and associates it with a specific individual when a Facebook user visits Lee Enterprises' websites.  As Plaintiffs explain, "[w]hen a Facebook user logs into Facebook, a "c_user" cookie – which contains a user's non-encrypted Facebook User ID number ("UID") – is automatically created and stored on the user's device for up to a year."  *See* Complaint ¶ 44.

Once a Facebook Cookie is installed, off Facebook activity can be tracked and the Facebook Cookie can be shared with Facebook through a business tool known as the Facebook Pixel.  *See* Complaint, ¶¶ 46, 51-52 and n. 14, Ex. A.  The Facebook Pixel is free software code that Facebook allows third-party website developers to install on their websites.  The Facebook Pixel is used to track a user's off Facebook activity on web pages by monitoring events and sending event data directly to Facebook for use in tailoring advertisements of Meta products, measuring advertisement performance and effectiveness and supporting marketing and analytics.  Complaint, ¶ 46, n 16, at Exhibit A at 3.  Facebook, in turn, may be able to determine a specific Facebook user's off Facebook activity by translating the Facebook UID to a Facebook user's account.  *See* Complaint ¶ 44, n. 14 attached as Exhibit A at 1.

Importantly, it is the Facebook user (i.e., each Plaintiff) who controls whether and the extent that a Facebook Cookie can be used to track their off Facebook activity.  In other words, if the Facebook Cookie is not activated on a device or if the Facebook user is not using or visiting "Meta Products," "Products provided by other

members of Meta Companies," or "Websites and apps provided by other companies that use the Meta Products that incorporate Meta Technologies," the Facebook Pixel does not capture the Facebook Cookie. *See* Complaint, ¶ 44 n. 14, attached as Ex. A (Section titled "*Where do we use cookies*?").

Moreover, Facebook users can control the tracking of their off Facebook activity.  See *Id.* ¶ 44 n. 14 attached as Ex. A (Section titled "*How can you control your Information?"*).  Among other things, the Facebook *Privacy Center* makes clear that a Facebook user has the ability to "turn off" tracking of off Facebook activity by simply managing the privacy settings on their device.  *See id,*  (Section titled "*How do I manage my future off-Facebook activity"*).

It also is no surprise to a Facebook user that their off Facebook activity is tracked.  Facebook explains to Facebook users in its Terms of Service that:

> We don't charge you to use Facebook or the other products or services covered by these Terms, unless we state otherwise.  Instead, businesses and organizations pay us to show you ads for their products and services.  By using our Products, you agree that we can show you ads that we think may be relevant to you and your interests.  We use your personal data to help determine which personalized ads to show you.
>
> ....
>
> We use your personal data, such as information about your activity and interests, to show you ads that are more relevant to you.
>
> ....
>
> You have controls over the types of ads and advertisers you see, and the types of information we use to determine which ads we show you. **Learn more**.

*See* Facebook Terms of Service located at https://www.facebook.com/terms (last visited Mar. 29, 2023), attached as Exhibit B at 2, 5.

## III.   PLAINTIFFS' ALLEGATIONS

### A.   Lee Enterprises' Alleged Violation of the VPPA

Plaintiffs Brittney Stoudemire, Amanda Vose, Lucinda Jackson Barbara Grazioli, Dana Foley, and Douglas Castle (collectively "Plaintiffs") allege they registered for free electronic newsletters or paid for local digital news subscriptions that are offered by Lee Enterprises.[5]   Complaint, ¶¶ 14-19.  Plaintiffs claim, generally, that they each watched unspecified "prerecorded video content on a Lee Enterprises' website using a browser on a device that was signed into Facebook." *Id.*, ¶¶ 14-19.

Each of the Plaintiffs allege that Lee Enterprises violated the VPPA by using "Tracking Methods" to "track user activity on the Lee Sites that was then disclosed to Facebook without their consent."  *Id.*, ¶¶ 6- 7.  Plaintiffs further allege that the information Lee Enterprises shares with Facebook is "personally identifiable information ("PII") tied to the title, description or subject matter of prerecorded audio video material."  *Id.*, ¶ 6, 109.  Although Plaintiffs explain how Facebook tracks its users' activities (*Id.*, ¶¶ 44-46), they fail to allege any facts establishing that Lee Enterprises had knowledge of their identity and video watching activities and knowingly disclosed that information to Facebook.

---

[5]Lee Enterprises is a digital media company that provide local news to seventy-seven markets located in twenty-six states across the United States.  Complaint, ¶ 20.

### B.     The Complaint Fails to Identify Any Specific Videos Requested or Watched by Plaintiffs

While the Complaint contains examples of the code that Facebook allegedly receives from Lee Enterprises through use of the Facebook Pixel, (*Id.,* ¶¶ 50-52, 65-67), there are no allegations that the examples relate to the activity of any named Plaintiff.  To the contrary, Plaintiffs do not even allege the identity of any specific video(s) they purportedly requested or watched.

### C.     Plaintiffs Fail to Allege any Harm

In addition to not identifying any specific video materials or services they purportedly requested or obtained, the Complaint also fails to allege any actual harm or damages that any named Plaintiff sustained.  Instead, the Complaint alleges only that Plaintiffs are entitled to declaratory relief, injunctive and equitable relief, and statutory damages under the VPPA.  *Id.* at ¶ 154.

## IV.   LEGAL STANDARDS

### A.     Federal Rule of Civil Procedure 12(b)(1)

"Federal jurisdiction is limited by Article III of the Constitution to cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction" to hear the case.  *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011).  To have standing to sue in federal court, a litigant "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Auer v. Trans Union, Ltd. Liab. Co.*, 902 F.3d 873, 877 (8th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540,

1547 (2016).  A party seeking to litigate in federal court has the burden of

establishing subject matter jurisdiction, including standing, by a preponderance of

the evidence.  *Certon Software, Inc. v. EaglePicher Techs., LLC*, 4 F.4th 615, 618

(8th Cir. 2021).  Subject matter jurisdiction is properly challenged by a motion to

dismiss under Fed. R. Civ. P. 12(b)(1), and if lacking, the case must be dismissed.

Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503 (2006) ("when a

federal court concludes that it lacks subject-matter jurisdiction, the court must

dismiss the complaint in its entirety.").

### B.      Federal Rule of Civil Procedure 12(b)(6)

"[A] complaint must contain sufficient factual matter, accepted as true, 'to

state a claim to relief that is plausible on its face.'"  *Schulte v. Conopco, Inc.*, 997

F.3d 823, 825 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.

Ct. 1937, 173 L. Ed. 2d 868 (2009).  A claim is plausible on its face when it "pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Moreover,

when a complaint "pleads facts that are merely consistent with a defendant's

liability, it stops short of the line between possibility and plausibility." *Id.*

(quotations omitted).  Further, a "pleading that offers labels and conclusions or a

formulaic recitation of the elements of a cause of action will not do.  Nor does a

complaint suffice if it tenders naked assertions devoid of further factual

enhancement."  *City Union Mission, Inc. v. Sharp*, 36 F.4th 810, 815 (8th Cir. 2022)

(citations and quotations omitted).

- 11 -

## V.     LEGAL ARGUMENT

Plaintiffs lack standing to assert their VPPA claim because the Complaint fails to plausibly allege any injury, let alone a concrete injury, as required under Article III.  And, even if Plaintiffs had standing, their VPPA claim should still be dismissed because they fail to plausibly allege the essential elements to assert a cognizable claim under the VPPA.

### A.     Plaintiffs Lack Article III Standing Because They Have Failed to Adequately Allege a Concrete Injury

To establish standing, Plaintiffs must show (1) facts demonstrating an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by a favorable judicial decision.  *Schumacher v. SC Data Center, Inc.*, 33 F.4th 504, 509 (8th Cir. 2022).  As to an injury in fact, the allegations must establish some concrete, particularized, and actual or imminent injury.  *Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457, 461 (8th Cir. 2022).  This is true "even in the context of a statutory violation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).  Consequently, Plaintiffs cannot, as they attempt to do in this case, "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Spokeo*, 578 U.S. at 341.

This is made clear by the Eighth Circuit's decisions in *Ojogwu* and *Schumacher*.  Both decisions recognize that under *TransUnion LLC v. Ramirez*, a plaintiff cannot establish standing simply by pointing to a statutory violation because "an injury in law is not an injury in fact," and Congress "may not simply enact an injury into existence using its lawmaking power to transform something

that is not remotely harmful into something that is." *Ojogwu*, 26 F.4th at 461, 462-63 (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. at 2205 (2021)); *see also Schumacher*, 33 F.4th 504, 509 (quoting *TransUnion,* 141 S.Ct. at 2205) ("When courts are examining whether a plaintiff has suffered a concrete harm, it is important to distinguish between those that suffered a physical, monetary, or cognizable intangible harm from those seeking to collect statutorily allowed damages as a way to ensure a defendant's compliance with the law. The first group has standing to pursue statutory violations while the latter does not.").

In *Ojogwu*, a plaintiff-consumer-debtor claimed a defendant law firm violated Section 1692c(a)(2) of Fair Debt Collection Practices Act by mailing a garnishment summons directly to the debtor rather than his counsel. *Ojogwu*, 26 F.4th at 460. The debtor alleged the prohibited contact caused him intangible injuries in the form of nervousness, restlessness, irritability, and other negative emotions. *Id.* at 462. Recognizing that standing requires more than an alleged statutory violation, the Eighth Circuit dismissed the claim, concluding that the intangible injuries alleged did not establish standing because they flowed as a natural consequence of the plaintiff's actions in failing to pay his debts, not from the law firm's prohibited contact. *Id.* at 463.

In *Schumacher*, the Eighth Circuit reached a similar result. There, a plaintiff relied solely on a technical violation of a federal statute (Section 1681b(2)(A) of the Fair Credit Reporting Act) to establish standing, without any attempt to allege concrete harm. *Schumacher*, 33 F.4th at 512. The Eighth Circuit

found that "a technical violation under § 1681b(b)(2)(A) is insufficient to confer standing." *Id.* at 512.  It further found that, even if the FCRA was violated, the plaintiff had not alleged any concrete injury flowing from the violation, as was necessary to confer standing.  *Id.* at 514.

Like the plaintiffs in *Ojogwu* and *Schumacher*, Plaintiffs here assert a statutory violation of the VPPA without any allegations of a concrete injury or harm.  In the Complaint, Plaintiffs broadly allege that "subscribers of the Lee Sites have been harmed as a result of Defendant's violations of the VPPA," but fail to state what harm was purportedly sustained.  Complaint, ¶ 12.  This type of conclusory allegation of harm is insufficient as a matter of law under the *Iqbal* and *Twombly* pleading standard.  *Iqbal,* 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Indeed, the Eighth Circuit recognizes that these types of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are not entitled to the assumption of truth that is otherwise afforded to well-pleaded factual allegations and are, therefore, insufficient to confer standing.  *Auer v. Trans Union, LLC*, 902 F.3d 873, 878 (8th Cir. 2018) (quoting *Iqbal,* 556 U.S. at 678).

Moreover, like *Ojogwu,* Plaintiffs cannot contend they sustained intangible harms from the sharing of information with Facebook, because that sharing of information flowed from Plaintiffs' decisions to create Facebook accounts and consent to Facebook installing a Facebook Cookie on their browsing devices to track their internet activities so they could enhance their Facebook experiences by personalizing the content and advertisements they received.  *See* Complaint, ¶¶ 14

- 14 -

– 19, 44 and Ex. A.  In fact, as explained in the *How We Built a Facebook Pixel Inspector* article referenced in the Complaint, Plaintiffs had the ability to disconnect Facebook's tracking of their activity on third party websites, such as Lee Enterprises' websites, by ***simply adjusting their Facebook privacy settings***. *See* Complaint, ¶ 49, n. 20.  Thus, to the extent any information concerning Plaintiffs was actually disclosed to Facebook by Lee Enterprises, that disclosure resulted as "a natural consequence of the plaintiffs['] actions in" allowing the Facebook Cookie to be installed on their devices and their failure to control their own privacy settings.  *Ojogwu*, 26 F.4th at 463.  In other words, Plaintiffs' argument that the transfer of the code at issue included any information that might identify them as the person who visited the website depends entirely on Plaintiffs permitting Facebook to store and transmit their Facebook UID through a Facebook Cookie installed on their own devices, and Plaintiffs' failure to control their own Facebook privacy settings.

Because Plaintiffs have alleged no more than a "technical violation" of the VPPA (*see* Complaint, ¶¶ 116 – 120), they do not come remotely close to establishing Article III standing.  For this reason, the Complaint should be dismissed under Fed. R. Civ. Pro. 12(b)(1).

### B.    Plaintiffs Have Failed to Plausibly Allege the Essential Elements of a Cognizable VPPA Claim.

The Complaint also should be dismissed under Fed. R. Civ. Pro. 12(b)(6) because Plaintiffs fail to adequately allege that Lee Enterprises "knowingly" disclosed "personally identifiable information" to give rise to a cognizable claim.

Under the VPPA, only "[a] video tape service provider who **_knowingly discloses_**, to any person, **_personally identifiable information_** concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection [(c)]." 18 U.S.C. § 2710(b)(1) (emphasis added). Thus, to assert a cognizable claim, a plaintiff must allege facts establishing that a video tape service provider knowingly disclosed "1) a consumer's identity; 2) the identity of 'specific video materials'; and 3) the fact that the person identified 'requested or obtained' that material." *See In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015).

> **1.     Plaintiffs fail to allege that Lee Enterprises knowingly translated a Facebook UID to associate any Plaintiff with specific video materials viewed on a website.**

Plaintiffs' VPPA claim fails because they have not, and cannot, plausibly allege that Lee Enterprises knowingly disclosed[6] to Facebook their identities and the specific videos they requested or watched. In an attempt to satisfy this element, Plaintiffs allege that Lee Enterprises discloses to Facebook their Facebook UID embedded in a "c_user" cookie. Complaint, ¶ 44. This alleged disclosure occurs exclusively due to a piece of software code (i.e., a Facebook Cookie) that is created by Facebook, installed on Plaintiffs' device(s) by Facebook, and is the technology that triggers the request for information to be sent to Facebook. Complaint, ¶ 50, n.

---

[6]Although the VPPA does not define a knowing disclosure, the phrase has been interpreted as requiring some level of actual knowledge. *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) ("'knowingly' means consciousness of transmitting the private information. It does not merely mean transmitting the code.").

21 (*HTTP Cookies Explained, Human Who Codes*,

https://humanwhocodes.com/blog/2009/05/05/http-cookies-explained/), attached as

Exhibit C.

More importantly, notably absent from the Complaint are any allegations

that Lee Enterprises (i) links an individual consumer's identity to the Facebook

UID embedded in the Facebook Cookie, or (ii) otherwise actually knows or learns

the identity of any specific consumer through Lee Enterprises' use of the Facebook

Cookie or the Facebook Pixel.  The absence of these allegations is fatal to Plaintiffs'

VPPA claim.  Lee Enterprises cannot disclose what it does not know, which in this

case is the identity of any consumers associated with any Facebook UID.  Because

there are no allegations that Lee Enterprises linked an individual consumer's

identity to their Facebook UID, or actually knows or learns the identity of any

specific consumer from the Facebook Cookie or Facebook Pixel, the VPPA claim fails

as a matter of law.  *See Robinson v. Disney Online*, 152 F. Supp. 3d 176, 181

(S.D.N.Y. 2015) (dismissing VPPA claim and finding "liability would not be imposed

on providers like Disney unless they also knew that the information disclosed was

personally identifying, *see* 18 U.S.C. § 2710(a)(3)").

Moreover, Plaintiffs' allegation that Lee Enterprises' use of the Facebook

Pixel on its websites "***causes*** users' PII and Video Watching Data to be shared with

Facebook," does nothing to save their VPPA claim.  *See* Complaint, ¶ 7 (emphasis

added).  If Congress intended the VPPA to impose liability on a party that "causes"

a disclosure, as opposed to a party that "knowingly discloses," it would have said so.

- 17 -

As can be seen from numerous statutes enacted by Congress, there is a clear distinction between disclosing information and causing information to be disclosed. They are not the same. *See, e.g.*, 18 U.S.C. App. 3 §5 ("defendant reasonably expects to disclose or to cause the disclosure of classified information"); 10 U.S.C. §949p-5 ("if an accused reasonably expects to disclose, or to cause the disclosure of, classified information"); 15 U.S.C. §6821(a) (prohibiting any person to "cause to be disclosed . . . customer information of a financial institution"). Under the fundamental principal of statutory construction, where the plain language of a statute is clear, the statute should be enforced as written. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011). Here, the plain language of the VPPA clearly limits liability to a knowing disclosure. For this reason alone, Plaintiffs' VPPA claim should be dismissed.

> **2. Plaintiffs' VPPA claim fails because an "ordinary person" cannot readily identify any of the Plaintiffs using the Facebook UID allegedly disclosed by Lee Enterprises.**

The VPPA defines PII to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). In interpreting the VPPA, the Third Circuit found that PII means a disclosure of "the kind of information that would readily permit an ***ordinary person*** to identify a specific individual's video-watching behavior." *See In re: Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 267 (3d Cir. 2016) (emphasis added). The Third Circuit reached this conclusion noting that Congress' purpose in passing the VPPA was "quite narrow: to prevent

disclosures of information that would, with little or no extra effort, permit an ordinary recipient to identify a particular person's video-watching habits. *Id.* at 284. It further made clear that "[t]o an average person, an IP address or **a digital code in a cookie file** would likely be of little help in trying to identify an actual person." *Id.*, at 283 (emphasis added).

The Ninth Circuit adopted a similar definition of PII, finding that the "ordinary person" test used in *In re: Nickelodeon Consumer Privacy Litigation* "better informs video service providers of their obligations under the VPPA." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). The *Eichenberger* Court went on to note that the VPPA is concerned with "what information a video service provider **discloses**, not [] what the recipient of that information decides to do with it." *Id.* at 985 (emphasis added). Stated differently, *Eichenberger* recognizes that PII must have the same meaning "without regard to its recipient's capabilities." *Id.* Applying this definition, the *Eichenberger* court found that the disclosure of a plaintiff's Roku device serial number and the videos he watched did not constitute a disclosure of personally identifiable information because it cannot "identify the plaintiff and his viewing habits unless it is combined with other data in Adobe's possession." *Id.* at 906.[7]

---

[7]In *Yershov v. Gannett Satellite Info.* Network, Inc., 820 F.3d 482 (1st Cir. 2016) the First Circuit adopted a broader standard which is the minority view. It found the term "personally identifiable information" encompasses "information reasonably **and foreseeably likely to reveal** which ... videos [a person] has obtained." 820 F.3d at 486 (emphasis added). In *Yershov*, the court found an iPhone user's GPS coordinates and a device identifier fell within that definition of "personally identifiable information." *Id.*

Applying the "ordinary person" test here reveals that Plaintiffs have failed to plausibly allege that Lee Enterprises disclosed PII by transmitting through its use of the Facebook Pixel.  As outlined above, standing alone, the screen shots of the software code that Plaintiffs cite in the Complaint are meaningless to an ordinary person, and do not enable an ordinary person to identify a specific consumer and the specific videos that consumer requested or viewed.[8]  Consistent with *In re: Nickelodeon*, the digital cookie containing the Facebook UID is not "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *In re: Nickelodeon Consumer Privacy Litigation*, 827 F.3d at 267.

It also is worth noting that Plaintiffs do not allege that the Facebook UID personally identifies a specific individual, as opposed to identifying a Facebook profile.  See Complaint, ¶ 45.  The reason for this is that the Facebook policy Plaintiffs reference in the Complaint at paragraph 45 states, "[y]our User ID is a string of numbers ***that doesn't personally identify you*** but does connect to your Facebook profile."  *See* Complaint, ¶ 45, n. 15 (*Help Center: How usernames and user IDs are used on Facebook Profiles*, Facebook, https://www.facebook.com/help/211813265517027 (last visited Mar. 29, 2023), attached as Exhibit D at 1-2 (emphasis added)).

---

[8]This is made clear by a review of the Complaint itself.  In the Complaint, Plaintiffs have cited to eleven articles and Facebook/Meta policies in an effort to explain how the Facebook Cookie and the Facebook Pixel work, and how they allegedly disclose a specific individual's video viewing habits.  *See* Complaint, ¶ 46 (n. 16, 17); ¶47 (n. 18, 19, 20), ¶49 (n. 20), ¶ 50 (n. 21), ¶55, (n. 28), ¶60 (n. 35), ¶62 (n. 36) and ¶63, (n. 37).

Because no ordinary person looking at the software code would be able to identify an individual and determine their video viewing habits, without referring to additional materials and technical know-how, Plaintiffs cannot plausibly allege that Lee Enterprises disclosed information that would readily permit an ordinary person to identify any Plaintiff let alone their video-watching behavior.

Further, Plaintiffs' theory is that Lee Enterprises violates the VPPA because *Facebook* is able to associate a Facebook UID with a particular Plaintiff. However, as set forth above, the VPPA is concerned with "what information ***a video service provider discloses***, not [] what the recipient of that information decides to do with it." *Eichenberger* at 985 (emphasis added). Plaintiffs do not allege that Lee Enterprises has associated a Facebook UID with any specific person and transmitted that translation to Facebook. For these reasons, Plaintiffs' VPPA claim fails as a matter of law.

### 3.   Plaintiffs fail to allege that Lee Enterprises disclosed the specific video materials or services they actually viewed or requested.

Plaintiffs' VPPA claim also fails because the Complaint does not contain any allegations that Lee Enterprises disclosed information about the specific video materials or services that any Plaintiff actually requested or viewed. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 279 (The VPPA expressly requires the knowing disclosure of "information which identifies ***a person as having requested or obtained specific video materials or services*** from a video tape service provider."). Indeed, the Complaint is silent with respect to any specific video(s) allegedly viewed or requested by Plaintiffs.

While Plaintiffs allege generally that they watched pre-recorded videos on Lee Enterprises' websites (Complaint, ¶¶ 14-19) and provide general examples of URLs purportedly shared with Facebook, they fail to identify a single video they specifically watched, which they allege was improperly disclosed. *See e.g.,* Complaint, ¶ 56 (the "inclusion of web page address and video content information is depicted below on Lee's websites"), and ¶ 61 ("The Lee Sites similarly sends video title and URLs of videos through their Domain requests, as depicted in Figures 8 through 13"). Plaintiffs' failure to allege plausible facts to satisfy this element requires dismissal of their VPPA claim as a matter of law.

## VI. CONCLUSION

Based on the foregoing, Lee Enterprises respectfully requests that the Court enter an Order dismissing Plaintiffs' VPPA claim with prejudice.

Dated:  March 30, 2023

**TROUTMAN PEPPER HAMILTON SANDERS LLP**                              **LANE & WATERMAN LLP**

By: */s/ Ronald I. Raether, Jr.*

    Ronald I. Raether, Jr. [*Pro Hac Motion Pending*] [*lead counsel*]
5 Park Plaza, Suite 1400
Irvine, CA 92614
Telephone:  949.622.2722
Email:  Ron.Raether@trouman.com

    -and-

    Angelo A. Stio III [*Pro Hac Motion Pending*]
301 Carnegie Center, Suite 400
Princeton, NJ  08543
Telephone: 609.951.4125
Facsimile:  609.452.1147
Email:  Angelo.Stio@troutman.com

    -and-

    Tambry L. Bradford [*Pro Hac Motion Pending*]
Two California Plaza
350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone:  213.928.9805
Email: Tambry.Bradford@troutman.com

By: */s/ Joshua J. McIntyre*

    Ian J. Russell, AT0006813
Joshua J. McIntyre, AT0011426
220 North Main Street, Suite 600
Davenport, IA 52801
Telephone:  563-324-3246
Facsimile:  563-324-1616
Email:  IRussell@l-wlaw.com
Email:  JMcIntyre@l-wlaw.com

*Attorneys for Defendant, Lee Enterprises, Incorporated*

- 23 -

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel listed of record.

By _/s/ Joshua J. McIntyre_