**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**DAVENPORT DIVISION**

BRITTNEY STOUDEMIRE, AMANDA VOSE, LUCINDA JACKSON, DANA FOLEY, DOUGLAS CASTLE and BARBARA GRAZIOLI ,

Plaintiff,

vs.

LEE ENTERPRISES, INCORPORATED,

Defendant.

Civil Action No. 3:22-cv-00086-SHL-SBJ

**LEE ENTERPRISES' REPLY BRIEF IN FURTHER SUPPORT OF RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**


I. PRELIMINARY STATEMENT ........ 1

II. LEGAL ANALYSIS ........ 2

A. Plaintiffs do not plausibly allege that Lee disclosed any specific video materials or services they viewed or requested. ........ 2

B. The VPPA claim fails because Plaintiffs do not allege that Lee knowingly disclosed their PII to Facebook. ........ 3

C. The VPPA claim fails under the "ordinary person" test because the software code that is transmitted to Facebook is meaningless to an ordinary person ........ 7

D. Plaintiffs have not established standing ........ 10

III. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrose v. Boston Globe Media Partners LLC*,
2022 U.S. Dist. LEXIS 168403 (D. Mass. Sept. 19, 2022) ....................9, 13

*Baron v. Syniverse Corp*.,
2022 U.S. Dist. LEXIS 184308 (M.D. Fla. Oct. 7, 2022) ....................10

*Belozerov v. Gannett Co.*,
2022 U.S. Dist. LEXIS 229436 (D. Mass. Dec. 20, 2022) ....................6, 13

*Braitberg v. Charter Commc'ns, Inc.*,
836 F.3d 925 (8th Cir. 2016) ....................11

*Cappello v. Walmart Inc.*,
2019 U.S. Dist. LEXIS 237326 (N.D. Cal. Apr. 5, 2019) ....................13

*Cross v. State Farm Mut. Auto. Ins. Co.*,
2022 U.S. Dist. LEXIS 10676 (W.D. Ark. Jan. 20, 2022) ....................12, 13

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ....................3

*Feldman v. Star Trib. Media Co. LLC*,
2023 U.S. Dist. LEXIS 37416 (D. Minn. Mar. 7, 2023) ....................6, 13

*Harris v. Pub. Broad. Serv.*,
2023 U.S. Dist. LEXIS 45888 (N.D. Ga. Mar. 20, 2023) ....................13

*In re Hulu Privacy Litig.*,
2014 U.S. Dist. LEXIS 59479 (N.D. Cal. 2014) ....................9

*Hunstein v. Preferred Collection & Mgmt. Servs.*,
48 F.4th 1236 (11th Cir. 2022) ....................10

*Lebakken v. WebMD, LLC*,
2022 U.S. Dist. LEXIS 201010 (N.D. Ga. Nov. 4, 2022) ....................6, 13

*Louth v. NFL Enter. LLC*,
2022 U.S. Dist. LEXIS 163706 (D.R.I. Sep. 12, 2022) ....................13

*Martin v. Meredith Corp.*,
2023 U.S. Dist. LEXIS 27539 (S.D.N.Y. Feb. 17, 2023) ....................3, 4, 13, 14

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ....................1, 4, 5

*Mullins v. Monarch Recovery Mgmt., Inc.*,
2022 U.S. Dist. LEXIS 190514 (W.D.N.C. Oct. 18, 2022)....................10

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016)....................2, 3, 7, 9

*Pulla v. Amoco Oil Co.*,
882 F. Supp. 836 (S.D. Iowa 1994) ....................11, 12

*Ramirez v. TransUnion LLC*,
141 S. Ct. 2190 (2021)....................2, 10, 12, 13

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015)....................8, 9

*Shields v. Pro. Bureau of Collections of Maryland, Inc.*,
55 F.4th 823 (10th Cir. 2022) ....................10

*Stark v. Patreon, Inc.*,
2022 U.S. Dist. LEXIS 187602 (N.D. Cal. Oct. 13, 2022) ....................9, 13

*Stark v. Patreon, Inc.*,
2023 U.S. Dist. LEXIS 27481 (N.D. Cal. Feb. 17, 2023) ....................13

*Tureen v. Equifax, Inc.*,
571 F.2d 411 (8th Cir. 1978) ....................11

**Statutes**

18 U.S.C. §2710(a)(3)....................3

18 U.S.C. §2710(b)(1) ....................3

**Other Authorities**

Restatement (Second) of Torts § 652A (Am. L. Inst. 1977)....................11

Restatement (Second) of Torts § 652D (Am. L. Inst. 1977)....................11

## I. PRELIMINARY STATEMENT

Plaintiffs' opposition ("Opp. Brf.") to Lee Enterprises, Incorporated's ("Lee") motion to dismiss ("Mvg. Brf.") highlights the three fatal flaws with the Complaint.

First, the Complaint does not plausibly allege a knowing disclosure of personally identifiable information ("PII") by Lee to support a VPPA violation. Plaintiffs' opposition focuses on the "knowing" element but ignores that there is no "disclosure" of PII (the identity of a person and the titles to specific videos watched or requested). As outlined below, the Complaint does not plausibly identify a single video a named Plaintiff watched or requested. On this basis alone the VPPA claim must be dismissed. The VPPA claim also must be dismissed because Plaintiffs admit, in their Complaint and Opposition Brief, that the alleged "disclosure" of PII was made by the Plaintiffs' own web browsing devices. Because Lee cannot disclose information that it does not possess and has never possessed (i.e., the Facebook Cookie), there is no knowing disclosure to support a VPPA claim. Recognizing this error, Plaintiffs argue that "causing" a disclosure to occur is the same as a knowing disclosure.[1] Plaintiffs offer no legal authority to support this argument. A similar argument was rejected by the Ninth Circuit in *Mollett v. Netflix.*

Second, the VPPA claim also fails because the software code transmitted to Facebook does not enable an "ordinary person" to identify a specific individual. Plaintiffs' argument that an ordinary person with little technical savvy can easily obtain the identity of a specific individual is disposed of by a simple review of the Complaint. The information allegedly transmitted to Facebook is not software code with large red call out boxes and references to multiple articles and policies explaining code. The information is dense computer code that does not advise the recipient that it includes a Facebook ID, and is otherwise meaningless to an ordinary person

---

[1] *See* Opp. Brf. at 9.

without access to numerous external sources. When the ordinary person test articulated in *In re Nickelodeon Consumer Priv. Litig.* ("*In re Nickelodeon*"),[2] is applied, the software code is not the type of information that an ordinary person, with little effort, understands to identify an individual and that individual's video viewing habits.

Finally, Plaintiffs do not dispute that their Complaint fails to contain an allegation of an injury or harm. Plaintiffs instead claim that standing exists here based on a technical violation of the VPPA and that the VPPA protects harm similar to harms that courts traditionally recognize to give rise to a claim at common law. This argument fails because Plaintiffs make no attempt to allege any of the harms traditionally protected at common law. *Ramirez v. TransUnion LLC*[3] recognized that a mere statutory violation alone is insufficient to establish an injury-in-fact to give rise to standing. Because Plaintiffs do not attempt to allege any injury-in-fact, they cannot establish Article III standing.

## II. LEGAL ANALYSIS

### A. Plaintiffs do not plausibly allege that Lee disclosed any specific video materials or services they viewed or requested.

In its moving brief, Lee demonstrated that Plaintiffs' VPPA claim fails because the Complaint does not plausibly allege Lee disclosed any information about the specific videos any Plaintiff viewed or requested. *See* Mvg. Brf. at 10, 21-22. In response, Plaintiffs claim they have no obligation to identify "specific videos" to assert a VPPA claim. Opp. Brf. at 23. According to Plaintiffs, all that is required are general allegations that "they requested or obtained specific video services from Lee's specific websites." *Id.* Plaintiffs are wrong.

---

[2] 827 F.3d 262 (3d Cir. 2016).
[3] 141 S. Ct. 2190 (2021).

The VPPA imposes liability if "'[a] video tape service provider . . . knowingly disclose[d], to any person, ***personally identifiable information*** concerning any consumer of such provider.'" *In re Nickelodeon*, 827 F.3d at 279 (quoting 18 U.S.C. §2710(b)(1)) (emphasis added). The VPPA defines "personally identifiable information" ("PII") as information that "includes information which identifies a person as having requested or obtained ***specific video materials or services*** from a video tape service provider." 18 U.S.C. §2710(a)(3) (emphasis added). Courts interpreting this definition of PII also recognize a prohibited disclosure under the VPPA must identify specific videos a particular person watched or requested. *See*, *e.g.*, *In re Nickelodeon*, 827 F.3d at 285 (quoting *In re Hulu Privacy Litig.*, 2014 U.S. Dist. LEXIS 59479, at *27 (N.D. Cal. 2014)); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (the VPPA prohibits a video rental store from disclosing "the name and address of a customer—along ***with a list of the videos that the customer had viewed***") (emphasis added).

Plaintiffs' argument that they do not need to plausibly allege specific videos that they watched or requested also was a basis for the dismissal of a VPPA claim in *Martin v. Meredith Corp.*, 2023 U.S. Dist. LEXIS 27539 (S.D.N.Y. Feb. 17, 2023). There, the court dismissed the VPPA claim as the PII allegedly transmitted to Facebook did "not indicate that a website visitor requested or obtained ***specific video materials*** on that webpage." *Id.* at *8.

Because the Complaint does not plausibly allege any specific videos that any Plaintiffs viewed or requested, (*see* Mvg. Brf., at 10, 21-22), the VPPA claim is not cognizable as a matter of law.

**B. The VPPA claim fails because Plaintiffs do not allege that Lee knowingly disclosed their PII to Facebook.**

In its moving brief, Lee also demonstrated that Plaintiffs' VPPA claim fails as a matter of law because the Complaint does not plausibly allege a knowing disclosure of PII. *See* Mvg. Brf.

at 16-18. Lee demonstrated it could not disclose information it never had in its possession. *Id.* Lee also demonstrated that it cannot be liable for a VPPA violation because the express language of the statute imposes liability for a "knowing disclosure" of PII and not for "causing" a disclosure, which is what Lee is alleged to have done here. *See* Cmpl., ¶148-49 ("…Defendant utilized the Tracking Methods to **force** Plaintiffs' web browser to transfer Plaintiffs' identifying information, like their Facebook ID, along with Plaintiffs' event data, like the title of the videos they viewed. Defendant knowingly disclosed Plaintiffs' PII **which is triggered automatically** through Defendant's use of the Tracking Methods….") (emphasis added).

Plaintiffs' opposition contends that Lee causes knowing disclosures of PII as part of its overall use of data and the Facebook Pixel. Opp. Brf. at 6. This argument fails, as Lee is not the party that discloses anything; Plaintiffs admit the transmission of their alleged PII to Facebook is made by the Plaintiffs' own web browser. *See* Cmpl., ¶7 (alleging Lee Enterprises "causes users' PII and Video Watching Data to be shared with Facebook"); Cmpl., ¶148 (acknowledging that the plaintiffs' own web browsers (i.e., computers or phones) disclose the personally identifying information to Facebook); Opp. Brf. at 6 ("the Tracking Methods on the Lee Sites . . . caused Plaintiffs' Video Watching Data and PII to be automatically transmitted to Facebook."); Opp. Brf. at 9 ("Lee facilitates the disclosure of Plaintiffs' PII to Facebook"). Indeed, the code transmitted to Facebook, which allegedly identifies a specific individual, is the "c_user" cookie that contains a Facebook ID (the "Facebook Cookie"). *See* Mvg. Brf. at 16-17. This Facebook Cookie is created by Facebook, installed on Plaintiffs' web-browsing devices by Facebook, and is the technology that enables Plaintiffs' web-browsing devices to transmit Plaintiffs' alleged PII to Facebook. *See id.* Since Lee cannot be responsible for disclosures of information by Plaintiffs, or even causing a

disclosure, there can be no VPPA violation here. *See Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066-67 (9th Cir. 2015).

The *Mollett v. Netflix, Inc.* case demonstrates that Plaintiffs fail to plausibly allege a VPPA violation. In *Mollett*, a plaintiff-subscriber sued Netflix claiming Netflix violated the VPPA by allowing her PII to be disclosed to third parties. The disclosure at issue involved Netflix sending the subscriber's video watching information to her Netflix account, which was then accessed by third parties who the subscriber allowed to access her accounts. *See id.* at 1064-65. The plaintiff-subscriber alleged Netflix disclosed her PII by failing to take necessary precautions to prevent third parties from accessing the information. *See id.*

Netflix moved to dismiss the VPPA claim on the basis that the disclosure of the PII was made by the subscriber herself and therefore it could not be liable. *Id.* at 1065-67. The District Court agreed and dismissed the complaint. The Ninth Circuit affirmed, holding:

> [t]he fact that a subscriber may permit third parties to access her account, thereby allowing third parties to view Netflix's disclosures, does not alter the legal status of those disclosures. No matter the particular circumstances at a subscriber's residence, Netflix's actions remain the same: it transmits information automatically to the device that a subscriber connected to her Netflix account. **The lawfulness of this disclosure cannot depend on circumstances outside of Netflix's control**.

*Id.* at 1066-67 (emphasis added).

Like *Mollett*, Lee cannot be liable under the VPPA for the Plaintiffs' actions. Plaintiffs voluntarily became Facebook users, allowed Facebook to install the Facebook Cookie on their web browsing devices, consented to Facebook tracking their internet activities, allowed Facebook to enable their web browsing devices to send their information to Facebook, and voluntarily published their personal information on their public Facebook profiles, which allegedly allows this data to be linked to them personally. *See* Mvg. Brf. at 6-9. Because Lee does not and cannot

control Plaintiffs' personal decisions, the allegations here are analogous to the allegations in *Mollett* and warrant dismissal of the VPPA claim.

Plaintiffs' argument that a number of courts have found a violation of the VPPA exists when a defendant consciously implements the Facebook Pixel onto its website does not alter the conclusion that Lee did not knowingly disclose any PII. Opp. Brf. at 7. The cases Plaintiffs rely upon for this argument are distinguishable. For example, in *Czarnionka v. Epoch Times Ass'n, Inc.*, the court found that Plaintiff alleged throughout the Complaint that "Defendant itself discloses subscriber information by installing and maintaining the Pixel on its website." 2022 U.S. Dist. LEXIS 209067, at *9 (S.D.N.Y. Nov. 17, 2022), *motion to certify appeal denied*, 2022 U.S. Dist. LEXIS 226328 (S.D.N.Y. Dec. 15, 2022). Moreover, the defendants in *Feldman v. Star Tribune Media Co., LLC*, *Belozerov v. Gannet Co.*, and *Lebakken v. WebMD, LLC*, did not argue, as Lee does here, that the disclosure of PII was made by plaintiffs' web-browsing devices. *Feldman v. Star Trib. Media Co. LLC*, 2023 U.S. Dist. LEXIS 37416, at *30 (D. Minn. Mar. 7, 2023) (alleging no disclosure because no allegations that the Star Tribune "*knew* that Facebook would *actually connect* the disclosed video URLs and Facebook IDs.") (emphasis in original); *Lebakken v. WebMD, LLC*, 2022 U.S. Dist. LEXIS 201010, at *13 (N.D. Ga. Nov. 4, 2022); ("Lebakken has not alleged facts showing that WebMD knew its consumers' video viewing information and identify information would be combined and shared with Facebook."); *Belozerov v. Gannett Co.*, 2022 U.S. Dist. LEXIS 229436, at *10 (D. Mass. Dec. 20, 2022) (Defendant argued there was no knowing disclosure because "Facebook, not defendant, placed the tracking pixel on the USA Today website").

Finally, Lee established in its moving brief that there is no knowing disclosure alleged here because the principles of statutory construction recognize that "causing" a disclosure (which Lee

is alleged to have done) is not the same as knowingly disclosing PII under the VPPA. Mvg. Brf. at 18. Plaintiffs offer no serious opposition to this argument. *See* Opp. Brf. at 9. Plaintiffs' response is that the statutes that Lee relies on to draw a distinction between "causing" a disclosure and making a knowing disclosure are "unrelated." *Id.* The statutes, however, demonstrate the legislature's recognition that causing a disclosure is not the same as making a knowing disclosure. Since the VPPA requires a party to make a knowing disclosure, which Lee has not done here, there can be no VPPA liability. Plaintiffs offer no legal support to the contrary.

### C. The VPPA claim fails under the "ordinary person" test because the software code that is transmitted to Facebook is meaningless to an ordinary person

Lee demonstrated in its moving brief that under the ordinary person test established in *In re Nickelodeon*, Plaintiffs cannot plausibly allege the software code referenced in their Complaint readily permits an ordinary person to identify a specific individual and that individual's video-watching habits to state a cognizable VPPA claim. Mvg. Brf. at 18-21.

In their opposition brief, Plaintiffs claim "*anyone*, even someone with limited technical proficiency, can easily identify a person simply by appending the Facebook ID to www.facebook.com (i.e., www.facebook.com/[ID _here])." Opp. Brf. at 10. The problem with this argument is that Plaintiffs are putting the rabbit in the hat. The argument assumes that an ordinary person: (1) has the technical know-how to access and read the software code, (2) understands that a "c_user cookie" with a series of random digits attached is a Facebook ID, and (3) understands further that one can type these random digits into www.facebook.com to then identify a specific user profile that may contain personal information about an individual. A simple review of the software code in the Complaint reveals that no ordinary person would even know that that software code contains a Facebook ID, let alone know that a Facebook ID allegedly identifies a specific person. *See* Mvg. Brf. at 21.

Plaintiffs' argument also is belied by the undisputed fact that every screenshot of the software code in the Complaint contains red bold call out boxes to identify where the alleged title to a video is located and where the alleged Facebook ID is located. *See* Cmpl., ¶¶56, 61. If an ordinary person could understand the code and understand what it means, there would be no need for red call out boxes to identify it. There also would be no need for a detailed explanation of what the code means. Yet, Plaintiffs dedicate 29 paragraphs and eighteen pages in their Complaint to explaining the software code and twelve different technical articles and Facebook/Meta policies. *See* Cmpl., ¶¶40-68; *see also* Mvg. Brf. at 20. If an ordinary person with "extremely limited technical proficiency" could easily identify a specific person and that person's video-watching habits from the code, there would be no need for Plaintiffs to go to these extremes to advise the court what the software code means and how the Facebook Cookie works. These extremes demonstrate the software code is not the type of information that would permit an ordinary person to identify a specific individual. *See* Mvg. Brf. at 20.

Plaintiffs' argument that the Facebook Cookie identifies a specific person also ignores the Facebook policy cited in paragraph 45 of the Complaint, which states the Facebook ID "is a string of numbers ***that doesn't personally identify you*** but does connect to your Facebook profile." *See* Cmpl., ¶ 45, n. 15 (*Help Center: How usernames and user IDs are used on Facebook Profiles*), Facebook, https://www.facebook.com/help/211813265517027 (emphasis added). The Facebook ID identifies a user profile and can only be linked to a specific individual if the user chooses to publicly disclose his or her personal information.

It also is worth noting that Plaintiffs are overstating the caselaw when they claim that courts have "consistently found" that a Facebook ID satisfies the ordinary person standard. For example, in *Robinson v. Disney Online*, the court did not examine the type of software code presented here.

*Robinson* dealt with whether a serial number on a Roku device constituted PII under the VPPA and made a general statement *in dicta* that a Roku device serial number is different than a Facebook ID "which the *Hulu* court found, is thus equivalent to a name." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 184 (S.D.N.Y. 2015) (citing *In re Hulu Privacy Litig.*, 86 F.Supp.3d 1090, 1097 (N.D.Cal. 2015)). Notably, *In re Hulu*, which *Robinson* distinguished, also was decided ***before*** the Third Circuit established the ordinary person test in *In re Nickelodeon*. Similarly, the *Ambrose v. Boston Globe Media Partners LLC* case that Plaintiffs cite never applied the ordinary person test to determine whether a Facebook Cookie constituted PII. *Ambrose v. Boston Globe Media Partners LLC*, 2022 U.S. Dist. LEXIS 168403, at *3 (D. Mass. Sept. 19, 2022) (the alleged PII included a "Facebook ID, email address, first name, last name, mailing address, and information about what videos he has watched on the Globe website."). And *Stark v. Patreon, Inc.* is unpersuasive as it relies on *Ambrose* and involved the alleged disclosure of far more than a Facebook ID. *See* 2022 U.S. Dist. LEXIS 187602, at *17-19 (N.D. Cal. Oct. 13, 2022).[4]

If the Court applies the ordinary person test from *In re Nickelodeon* to the actual software code cited in the Complaint and not Plaintiffs' statement about what the code represents, it is clear that no ordinary person would know the code is capable of identifying a specific individual with little or no effort. For this reason alone, the Complaint must be dismissed for failure to plausibly allege the disclosure of PII.

---

[4] Plaintiffs are correct that the Court in *Czarnionka* found a plaintiff plausibly alleged that the Defendant's disclosure of the URL of a video and the subscriber's Facebook ID plausibly alleged disclosure of PII. *Czarnionka*, 2022 U.S. Dist. LEXIS 209067, at *3. With all due respect, this decision from the Southern District of New York was incorrect.

**D. Plaintiffs have not established standing**

Plaintiffs have not established any injury-in-fact here. *See* Lee Mvg. Brf., at 12-15. Instead, their sole allegation of harm is a technical violation of the VPPA by Lee. Cmpl., ¶ 12. This allegation of a statutory violation alone is insufficient to establish standing as established by the Supreme Court in *TransUnion LLC v. Ramirez*, 141 S. Ct. at 2205.

To try and save their Complaint from dismissal, Plaintiffs claim *TransUnion* recognized that the disclosure of private information constitutes an injury-in-fact to establish standing. Opp. Brf. at 15. But *TransUnion* does not create the bright line rule that Plaintiffs suggest. In fact, *TransUnion* recognizes that not all disclosures of private information are sufficient to confer standing. *See* 141 S. Ct. at 2210, n. 6. In addition, other courts have followed *TranUnion*'s lead and made similar rulings. *See Hunstein v. Preferred Collection & Mgmt. Servs.,* 48 F.4th 1236, 1245 (11th Cir. 2022) (finding "no standing when the plaintiffs alleged a statutory violation that did not hurt them."); *Shields v. Pro. Bureau of Collections of Maryland, Inc.,* 55 F.4th 823, 828-29 (10th Cir. 2022) (no standing for technical violation of a statute without allegations of publicity or intrusion on private solitude); *Baron v. Syniverse Corp*., 2022 U.S. Dist. LEXIS 184308, at *15-19 (M.D. Fla. Oct. 7, 2022) (no concrete injury, and therefore no standing to assert a public disclosure tort, without allegations that PII was publicized); *Mullins v. Monarch Recovery Mgmt., Inc.*, 2022 U.S. Dist. LEXIS 190514, at *5-6 (W.D.N.C. Oct. 18, 2022) (holding plaintiff who "failed to sufficiently allege that her private information was publicized in any actual, meaningful sense" had no standing). These cases demonstrate Plaintiffs' statutory-violation-is-enough argument fails.

Plaintiffs' argument also fails because, even if a statutory violation is alleged in a Complaint, a plaintiff must still plausibly allege a harm that bears a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141

S. Ct. at 2200. No such allegations are in the Complaint. And, while Plaintiffs argue in their opposition brief that their harm is similar to harms recognized for the public disclosure of private information and intrusion upon seclusion (Opp. Brf., at 14-19), these arguments fail as well.

The tort of public disclosure of private information arises when someone "gives publicity to a matter concerning the private life of another," that is "highly offensive to a reasonable person" and "is not of legitimate concern to the public." *Tureen v. Equifax, Inc.*, 571 F.2d 411, 417 (8th Cir. 1978) (quoting Restatement (Second) of Torts § 652D (Am. L. Inst. 1977)). "Publicity" means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* (quoting § 652D). Here, there are no allegations that Lee disclosed Plaintiffs' information to the public-at-large. Without a such publication, no harm from a public disclosure of private information exists. *Id.* at 417 (noting it "is not an invasion of the right of privacy, within the rule stated in [§ 652D], to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons").

An intrusion upon seclusion arises when a defendant "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns," and the intrusion is "highly offensive to a reasonable person." Restatement (Second) of Torts § 652A (Am. Law Inst. 1977).[5] For this tort to exist, however, Plaintiffs must allege they kept their private information secluded and that the disclosure of their private information was highly offensive to a reasonable person. *Pulla v. Amoco Oil Co.*, 882 F. Supp. 836, 866 (S.D. Iowa 1994) (citing Restatement § 652B cmt. c). Plaintiffs do not allege they kept their Facebook ID and browsing

[5] The Eighth Circuit has relied on the Restatement (Second) of Torts § 652A to articulate the standards for invasion of privacy including intrusion upon seclusion. *See Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016).

history private or that any disclosure to Facebook would be highly offensive. Nor can they make these allegations, when they acknowledge in the Complaint that they signed up for Facebook accounts, consented to Facebook installing a Facebook Cookie on their web-browsing devices to track their internet activities, and their own web browsers are the devices that made the disclosure of the alleged PII to Facebook. *See* Cmpl., ¶¶ 14-19, 44 and Mvg. Brf., Ex. A.[6] Under these circumstances, Plaintiffs' alleged harm is not the type traditionally recognized by courts with regard to an intrusion upon seclusion claim because the Complaint does not allege Plaintiffs sought private solitude or that the alleged disclosure of PII was "highly offensive" where, the disclosure was made to the very party (Facebook) that Plaintiffs allowed to track their internet activities.

Plaintiffs also claim the cases interpreting the TCPA somehow support their argument that a statutory violation alone is enough to confer standing. Opp. Brf. at 18. The decisions Plaintiffs rely upon, however, are not helpful because they are from jurisdictions outside of the Eighth Circuit and were all decided before *TransUnion*. Moreover, a district court in the Eighth Circuit, which addressed TCPA standing after *TransUnion*, recognized that "[a] plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Cross v. State Farm Mut. Auto. Ins. Co.*, 2022 U.S. Dist. LEXIS 10676, at *8 (W.D. Ark. Jan. 20, 2022) (quoting *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 958 (8th Cir. 2019)). In other words, even when there is a statutory violation of the TCPA, a plaintiff still must adequately allege an injury-in-fact to establish standing. Thus, the TCPA caselaw post-*TransUnion* demonstrates Plaintiffs do not have standing because they do not even try to allege an injury-in-fact.

---

[6] Moreover, Plaintiffs had the exclusive control to prevent the tracking of their internet activities, including the alleged PII, by adjusting their Facebook privacy settings. *See* Cmpl., ¶49, n. 20 (*How We Built A Facebook Pixel Inspector*, The Markup).

Finally, Plaintiffs argue that this Court should reject Lee's standing argument and "join every other court to have recently considered standing under the VPPA." Opp. Brf. at 13. Plaintiffs then proceed to identify 17 cases that they claim found standing premised on a VPPA violation. *Id.* Plaintiffs' reliance on these cases is misplaced. The majority of the cases Plaintiffs cite do not mention standing being challenged based on a mere statutory violation, as is the case here.[7] Of the remaining cases that Plaintiffs cite, only two were decided after *TransUnion* and both undermine Plaintiffs' arguments that standing exists based solely on a statutory violation.

In *Feldman v. Star Tribune Media Co. LLC*, the court found it "must '***examine the plaintiff's injury allegations*** and determine whether they have a 'close relationship' to a harm traditionally recognized as the basis for a case under the common law.'" 2023 U.S. Dist. LEXIS 37416, at *9 (D. Minn. Mar. 7, 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)) (emphasis added). Because the Complaint here contains no injury allegations, *Feldman* demonstrates Plaintiffs lack standing.

In *Martin*, the court did not address whether a statutory violation alone constitutes a concrete injury to confer standing. 2023 U.S. Dist. LEXIS 27539, *1-5. Moreover, in *Martin*, the harms alleged in the Complaint included "an invasion of Registered Users' privacy, loss of control over their information and emotional distress." *See Martin v. Meredith Corp., et al.*, Case. No. 22-cv-4776 (DLC) (S.D.N.Y.), Document 1, Complaint, ¶133, attached hereto as Exhibit E. None of

---

[7] The following cases cited in the opposition brief do not address standing: *Harris v. Pub. Broad. Serv.*, 2023 U.S. Dist. LEXIS 45888 (N.D. Ga. Mar. 20, 2023) (no standing challenge discussed); *Stark v. Patreon, Inc.*, 2023 U.S. Dist. LEXIS 27481 (N.D. Cal. Feb. 17, 2023) (same); *Belozerov*, 2022 U.S. Dist. LEXIS 229436; *Czarnionka*, 2022 U.S. Dist. LEXIS 209067 (same); *Lebakken*, 2022 U.S. Dist. LEXIS 201010 (same); *Stark*, 2022 U.S. Dist. LEXIS 187602 (same); *Ambrose v. Boston Globe Media Partners LLC*, 2022 U.S. Dist. LEXIS 168403 (D. Mass. Sept. 19, 2022) (same); *Louth v. NFL Enter. LLC*, 2022 U.S. Dist. LEXIS 163706 (D.R.I. Sep. 12, 2022) (same); *Cappello v. Walmart Inc.*, 2019 U.S. Dist. LEXIS 237326 (N.D. Cal. Apr. 5, 2019) (same).

these allegations of injury are present in this case, and therefore, *Martin* also undermines Plaintiffs' position and Plaintiffs' attempts to establish standing.

## III. CONCLUSION

Based on Lee's opening brief and this reply, the Court should enter an Order dismissing Plaintiffs' VPPA claim with prejudice.

Dated: May 19, 2023

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

By: */s/ Ronald I. Raether, Jr.*
Ronald I. Raether, Jr. [Admitted *Pro Hac Vice*]
5 Park Plaza, Suite 1400
Irvine, CA 92614
Telephone: 949.622.2722
Email: Ron.Raether@trouman.com

-and-

Angelo A. Stio III [Admitted *Pro Hac Vice*]
301 Carnegie Center, Suite 400
Princeton, NJ 08543
Telephone: 609.951.4125
Facsimile: 609.452.1147
Email: Angelo.Stio@troutman.com

-and-

Tambry L. Bradford [Admitted *Pro Hac Vice*]
Two California Plaza
350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: 213.928.9805
Email: Tambry.Bradford@troutman.com

*Attorneys for Defendant, Lee Enterprises, Incorporated*

**LANE & WATERMAN LLP**

By: */s/ Joshua J. McIntyre*
Ian J. Russell, AT0006813
Joshua J. McIntyre, AT0011426
220 North Main Street, Suite 600
Davenport, IA 52801
Telephone: 563-324-3246
Facsimile: 563-324-1616
Email: IRussell@l-wlaw.com
Email: JMcIntyre@l-wlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel listed of record.

By *_/s/ Joshua J. McIntyre_*