IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

BRITTNEY STOUDEMIRE, AMANDA VOSE, LUCINDA JACKSON, DANA FOLEY and BARBARA GRAZIOLI on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

v.

LEE ENTERPRISES, INC.

Defendant.

Civil Action No. 3:22-cv-00086-SHL-SBJ

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS**

**TABLE OF CONTENTS**

1) INTRODUCTION ... 1

2) SUMMARY OF THE PROCEEDINGS ... 2

a) Plaintiffs and Class Counsel Vigorously Litigated This Action on Behalf of the Class. ... 2

b) The Settlement ... 3

3) THE REQUESTED AWARD OF ATTORNEYS' FEES IS REASONABLE AND APPROPRIATE ... 3

a) The Percentage of the Fund Method Is Appropriate in This Common Fund Case ... 3

b) An Analysis of the Relevant *Johnson*-Factors Supports Class Counsel's Fee Request. ... 5

(i) The Settlement is Substantially Beneficial to the Class ... 5

1. The Settlement Established No Reverter to Defendant ... 6

(ii) Class Counsel Undertook Significant Risk, and The Factual and Legal Issues in this Action Were Complex ... 6

(iii) Class Counsel are Skilled Practitioners ... 8

(iv) Class Counsel Spent Considerable Time and Effort Litigating this Case ... 8

(v) To Date, No Class Member Has Objected to the Settlement ... 9

(vi) The Percentage Requested Is Consistent with Fee Awards in Similar Cases ... 9

c) Lodestar Cross-Check ... 10

4) CLASS COUNSEL ARE ENTITLED TO BE REIMBURSED FOR THEIR REASONABLE LITIGATION EXPENSES. ... 11

5) SETTLEMENT CLASS REPRESENTATIVES ARE ENTITLED TO SERVICE AWARDS. ... 13

6) CONCLUSION ... 14

# TABLE OF AUTHORITIES

**Page(s)**

***Us Supreme Court Cases***

*Blum v. Stenson*,
465 U.S. 886 (1984) .......... 3

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......... 4

*Central R.R. & Banking Co. v. Pettus*,
113 U.S. 116, 5 S. Ct. 387 (1885) .......... 4

Fed. R. Civ. P. 23(e) .......... 4

*Sprague v. Ticonic Nat. Bank*,
307 U.S. 161, 59 S. Ct. 777 (1939) .......... 4

***Federal Cases***

*Ambrose v. Boston Globe Media Partners LLC*,
1:22-CV-10195 (D. Mass.) .......... 5

*Braun v. Phila. Inquirer, LLC*,
2025 U.S. Dist. LEXIS 85786 (E.D. PA. May 6, 2025) .......... 14

*Civil Action*,
No. 3:22-cv-00086-SHL-SBJ .......... 1, 3

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) .......... 13

*Feldman v. Star Tribune Media Co. LLC*,
2024 U.S. Dist. LEXIS 106591 (D. Minn. June 17, 2024) .......... 14

*Feldman v. Star Tribune Media Company LLC*,
0:22-CV-01731 .......... 5

*Fellows v. Am. Campus Cmtys. Servs.*,
2018 U.S. Dist. LEXIS 110597 (E.D. Mo. March 6, 2018) .......... 6

*Griffin v. Jim Jamison, Inc.*,
188 F.3d 996 (8th Cir. 1999) .......... 5

*Huyer v. Buckley*,
849 F.3d 395 (8th Cir. Feb. 16, 2017) ........................................ 4, 10

*In re Airline Ticket Comm'n Antitrust Litig.*,
953 F. Supp. 280 (D. Minn. 1997)........................................ 10

*In re TikTok, Inc., Consumer Privacy Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. July 28, 2022) ........................................ 7, 14

*In re United States Bancorp Litigation*,
291 F.3d 1035 (8th Cir. Jan. 15, 2002) ........................................ 4, 13

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005)........................................ 4, 6, 9

*Johnson v. Georgia Highway Express*,
488 F.2d 714 (5th Cir. 1974) ........................................ 4

*Keil v. Lopez*,
862 F.3d 685 (8th Cir. 2017) ........................................ 4, 10

*Petrovic v. AMOCO Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ........................................ 10

*Sellers, et al. v. Bleacher Report, Inc., 2024-*,
003537-CA-01 ........................................ 5

*Stark v. Patreon, Inc.*,
2025 U.S. Dist. LEXIS 107441 (N.D. Cal. June 5, 2025) ........................................ 14

*Thomas v. Mid-Mo. Bank*,
2011 U.S. Dist. LEXIS 46123 (W.D. Mo. March 25, 2011) ........................................ 6

*Zilhaver v. UnitedHealth Grp., Inc.*,
646 F. Supp. 2d 1075 (D. Minn. 2009)........................................ 4, 11, 11

***State Cases***

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
No. 1:15-cv-02062, 2019 WL 4193376 (S.D. Ind. Sept. 4, 2019)........................................ 12

*Carlson v. C.H. Robinson Worldwide, Inc.*,
2006 WL 2671105 (D. Minn. Sept. 18, 2006)........................................ 10

*Dennard v. Transamerica Corp.*,
2016 WL 6471254 (N.D. Iowa Oct. 28, 2016) ........................................ 10

*In re Aetna Inc. Sec. Litig., No*,
1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) .......... 7

*In re E.W. Blanch Holdings, Inc. Securities Litig.*,
2003 WL 23335319 (D. Minn. June 16, 2003) .......... 10

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) .......... 10, 11, 11, 12

*Krueger v. Ameriprise Fin., Inc.*,
2015 WL 4246879 (D. Minn. July 13, 2015) .......... 4, 9

*Tussey v. ABB, Inc.*,
2019 WL 3859763 (W.D. Mo. Aug. 16, 2019) .......... 4, 8, 9, 12

***Other Cases***

*In re Ikon Office Solutions Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) .......... 7

*Wineland v. Casey's Gen. Stores, Inc.*,
267 F.R.D. 669 (S.D. Iowa 2009) .......... 13

***Federal Rules***

Fed. R. Civ. P.
Rule 23(h) .......... 11, 11

## 1) INTRODUCTION

As explained in the concurrently filed Memorandum in Support of Motion for Final Approval of Class Action Settlement, Plaintiffs Brittney Stoudemire, Amanda Vose, Lucinda Jackson, Dana Foley, and Barbara Grazioli ("Plaintiffs" or "Settlement Class Representatives") have reached a Settlement[1] with Defendant Lee Enterprises, Inc. ("Lee" or "Defendant", and collectively together with the Plaintiffs, the "Parties") that provides significant benefits to Settlement Class Members. More specifically, the Settlement provides for a common fund of $9,500,000 (the "Settlement Fund") for the benefit of the Settlement Class.[2] None of the Settlement Fund will revert to Defendant. Instead, each Settlement Class Member who submits a valid claim will be eligible to receive a *pro rata* distribution from the Settlement Fund.

As compensation for their efforts in successfully litigating this action (the "Action") and consistent with the Settlement Agreement, Class Counsel respectfully request attorneys' fees of one-third of the Settlement Fund, or $3,166,666.66, and reimbursement of Class Counsel's out-of-pocket litigation costs of $41,559.88, to be paid out of the Settlement Fund. As detailed more fully herein, the requested attorneys' fees and litigation costs are fair and reasonable based on, *inter alia*, the time and labor expended; the amount involved in the case and the results obtained; the skill required to perform the legal services; the novelty and difficulty of the issues involved; the customary and contingent nature of the fee; the experience and ability of counsel; the time limitations imposed by the circumstances; the reaction of the Settlement Class; public policy considerations; and fee awards in similar class action litigation.

---

[1] The Settlement Agreement was previously filed with the Court on March 5, 2025 as part of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. *See* ECF No. 53-3.

[2] All capitalized terms not defined herein are defined in the Settlement Agreement.

Plaintiff and Class Counsel also seek a service award for the Plaintiffs in the amount of $5,000 each in recognition of their role as the Settlement Class Representatives in prosecuting the litigation on behalf of the Settlement Class. This request is reasonable, consistent with service awards approved in similar class action settlements, and fully justified by the law and Plaintiffs' involvement in this case.

Thus, for the reasons stated herein as well as the accompanying Joint Declaration of Mark S. Reich and J. Barton Goplerud in Support of Plaintiffs' (i) Motion for Final Approval of Class Action Settlement, and (ii) Motion For Attorneys' Fees, Litigation Costs, and Service Award ("Joint Decl. of Class Counsel"), Class Counsel and Plaintiff respectfully request that the Court approve the requested attorneys' fees, litigation costs, and service award.

## 2) SUMMARY OF THE PROCEEDINGS

### a) Plaintiffs and Class Counsel Vigorously Litigated This Action on Behalf of the Class.

A detailed procedural history of this litigation is contained in Plaintiffs' Motion for Final Approval, being filed contemporaneously herewith. In summary, Class Counsel have worked diligently throughout the litigation to effectively advance the interests of the Class. These litigation efforts include the following: extensive pre-suit factual investigation, detailed and thorough forensic analyses of the cookie and pixel technologies employed on Defendant's websites as well as identification and analysis of the specific data transmitted to third parties through such technologies, drafting the complaint and the amended complaint, engaging in written discovery and a corporate representative deposition regarding the merits of Plaintiffs' claims and class certification, reviewing documents and data propounded by Defendant, drafting a mediation statement and reviewing and evaluating Defendant's submissions, participating in a full-day mediation, achieving a favorable Settlement on behalf of the Settlement Class, drafting the Settlement Agreement and all related exhibits, presenting the proposed Settlement to the Court and obtaining an order directing notice to the Settlement Class, and working with the Settlement

Administrator to implement the Court- approved notice plan and to address any other issues that may arise. *See* Joint Decl. of Class Counsel at ¶¶ 27-30.

**b) The Settlement**

Under the terms of the Settlement, Defendant shall establish a cash Settlement Fund of $9,500,000 for the benefit of Settlement Class Members. *See* Settlement Agreement at ¶¶ 33, 37, and 38. In accord with paragraph 30 of the Settlement Agreement, the Settlement Class shall include:

> Any of the approximately 1.5 million Lee subscribers identified on the Settlement Class List who requested or accessed video material on a Lee website at any time from December 18, 2020 until [March 4, 2025] and who was a Facebook user during that time.

The Settlement Class specifically excludes: (1) the Judge and Magistrate Judge presiding over this Action and their immediate family members; (2) Lee, its subsidiaries, parent companies, successors, predecessors, and any entity in which Lee has a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id*.

In exchange for the consideration from the Defendant, the Action will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims that have or could have been asserted against Lee, arising from or relating to the Tracking Methods or the VPPA, as alleged in the Action. *See Id*. ¶ 60.

**3) <u>THE REQUESTED AWARD OF ATTORNEYS' FEES IS REASONABLE AND APPROPRIATE.</u>**

**a) The Percentage of the Fund Method Is Appropriate in This Common Fund Case.**

The Supreme Court has consistently held that the percentage of the recovery approach is an appropriate methodology for awarding fees to plaintiffs' counsel who have established a common fund for the benefit of a class. *See Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984) ("Under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund

bestowed on the class"); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *see also Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 164–65, 59 S.Ct. 777, 779 (1939); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 123, 5 S. Ct. 387, 390 (1885). The Eighth Circuit has further held that the percentage of recovery approach is appropriate in common fund settlements. *See In re United States Bancorp Litigation,* 291 F.3d 1035, 1038 (8th Cir. Jan. 15, 2002)("We have approved the percentage-of-recovery methodology to evaluate attorneys' fees in a common fund settlement such as this."); *Huyer v. Buckley,* 849 F.3d 395, 398 (8th Cir. Feb. 16, 2017)(Finding district court's use of the percentage of the benefit approach to be appropriate).

The Eighth Circuit has not formally established factors that a district court should consider when calculating the reasonable percentage to award attorney fees in a common fund case but has held that "district courts may consider relevant factors from the twelve factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719–20 (5th Cir. 1974)." )." *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017).). Courts assessing fee requests under Fed. Fed. Fed. R. Civ. P. 23(e) and the *Johnson* factors evaluate the reasonableness of the request using established criteria. District Courts, in cases such as this one, have considered the following seven *Johnson* factors:

> the benefit conferred on the class; (2) the risk to which plaintiffs' counsel was exposed; (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both plaintiffs' and defendants'; (5) the time and labor involved; (6) the reaction of the class; and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases.

*Tussey v. ABB, Inc.*, 2019 WL 3859763, at *2 (W.D. Mo. Aug. 16, 2019); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015) (considering seven factors listed); *Zilhaver v. UnitedHealth Grp., Inc.*, 646 F.Supp.2d 1075, 1082–83 (D. Minn. 2009) (same); *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F.Supp.2d 980, 992–93 (D. Minn. 2005)

(same); *see also Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997 (8th Cir. 1999) ("Nor is it necessary for district courts to examine exhaustively and explicitly . . . all the factors that are relevant to the amount of a fee award."). Each of these factors supports Plaintiffs' request.

**b) An Analysis of the Relevant *Johnson*-Factors Supports Class Counsel's Fee Request.**

***(i) The Settlement is Substantially Beneficial to the Class***

The $9,500,000 Settlement Fund negotiated by Class Counsel provides exceptional monetary relief for Settlement Class Members. The cash portion of the Settlement equates to a recovery of approximately $6.35 per Settlement Class Member before costs and fees. This represents an outstanding recovery for Settlement Class Member basis in the VPPA context. *See, e.g., Ambrose v. Boston Globe Media Partners LLC*, 1:22-CV-10195 (D. Mass.), slip opinion (September 8, 2023) (granting final approval to $5,000,000 VPPA settlement yielding per settlement class member recoveries of $10.00); *Feldman v. Star Tribune Media Company LLC*, 0:22-CV-01731, slip opinion (June 17, 2024) (granting final approval to $2,900,000 VPPA settlement yielding per settlement class member recoveries of $9.67); *Sellers, et al. v. Bleacher Report, Inc.*, 2024-003537-CA-01, slip opinion (August 8, 2024) (granting final approval to $4,800,000 VPPA settlement yielding per settlement class member recoveries of $1.78).

Class Counsel recognize that in contrast to the tangible, immediate benefits of the Settlement, the outcome of continued litigation and a trial against Defendant is uncertain. The parties reached the Settlement prior to (i) full motions for class certification and for summary judgment, (ii) the conclusion of both fact and expert discovery, and (iii) trial preparation. The Settlement removes these risks and uncertainties and assures that Settlement Class Members will receive compensation for their claims now, without further litigation and expense.

Additionally, there is no guarantee that, even if Defendant's liability could be established, the damages awarded would have been higher than the current Settlement amount.

In short, the benefits secured through Settlement were achieved through the work and skill of Class Counsel and will immediately benefit all Settlement Class Members, while avoiding the risk and uncertainty of further litigation and a possible trial. Accordingly, consideration of this factor weighs in favor of Class Counsel's fee request.

***1. The Settlement Established No Reverter to Defendant***

Moreover, there is no reverter of any funds to Defendant. The Settlement Agreement provides that any residual funds remaining in the Settlement Fund after the payment of all approved claims and the expiration of time permitted to deposit Settlement Payments made by a check, shall be paid to a *cy pres* recipient. SA ¶ 38. No reverter to defendant weighs in favor of the settlement being substantially beneficial to the class. See *Thomas v. Mid-Mo. Bank,* 2011 U.S. Dist. LEXIS 46123, *4 (W.D. Mo. March 25, 2011)(reasoning that any unclaimed settlement fund amount shall be donated to non-profit organizations to determine that final approval should be granted); *Fellows v. Am. Campus Cmtys. Servs.,* 2018 U.S. Dist. LEXIS 110597, *7 (E.D. Mo. March 6, 2018)(Finding significant benefit to the class where there is no reverter to defendant).

***(ii) Class Counsel Undertook Significant Risk, and The Factual and Legal Issues in this Action Were Complex***

"The risks plaintiffs' counsel faced must be assessed as they existed in the morning of the action, not in light of the settlement ultimately achieved at the end of the day," and "Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *In re Xcel Energy*, 364 F.Supp.2d at 994. That risk was substantial at the outset here.

The complexity of this VPPA litigation is considerable and arises from both its substantive allegations and the damages analyses that must be undertaken if Plaintiffs are to prevail at trial. More specifically, Class Counsel have identified and investigated novel, complex, and technical

issues related to Defendant's conduct, including, among other things, investigation of its implementation, configuration, and use of the Meta Pixel (which is a hidden piece of software not identifiable through typical website interactions and which requires identifying and translating Pixel transmissions to determine how the Pixel was configured and what information it transmits to Meta); confirming that the Pixel's transmissions to Meta contained information protected by the VPPA; evaluating whether additional code on Defendant's website was also transmitting PII to third parties; and analyzing whether the transmissions at issue supported the legal claims Plaintiffs allege arise from Defendant's use of such technologies.

This kind of litigation presents many significant challenges at the class certification stage, and Class Counsels' significant investigation and analysis was instrumental in guiding this litigation to a resolution at this stage. The complexity of this litigation translates into considerable and material risk that Plaintiffs would not secure a recovery that would be greater than the amount of money recovered through the Settlement. *See, e.g., In re TikTok, Inc., Consumer Priv. Litig.*, 617 F.Supp.3d 904, 941 (N.D. Ill. 2022) ("Data privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty and, therefore, additional risk for Class Counsel."). In fact, there is a significant risk here that Class Counsel could prosecute this case for several more years (through full discovery, including expert discovery, class certification, motion for summary judgment, trial and the inevitable appeals that would follow) and, in the end, recover less than the proposed Settlement, or nothing, for the Class. *See In re Ikon Office Solutions Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000) (noting where large sums of money are at issue, litigation is guaranteed to be long, drawn-out, and any plaintiff's verdict would be appealed by defendants, further extending litigation); *accord In re Aetna Inc. Sec. Litig.*, No 1219, 2001 WL 20928, at *6 (E.D. Pa. Jan. 4, 2001) ("The risk of delay could have deleterious effects on any future recovery").

Despite these uncertainties regarding the outcome of the case, Class Counsel took the case on a wholly contingent basis and was prepared to devote thousands of hours and out-of-pocket dollars to the case. If the risks undertaken by Class Counsel in this matter are not "compensated

with a commensurate award, no firm, no matter how large or well-financed, will have the incentive to consider pursuing a case such as this." *Tussey*, 2019 WL 3859763, at *3.

***(iii) Class Counsel are Skilled Practitioners***

Class Counsel respectfully submit that the work they performed in this litigation reflects their skill and experience in complex class litigation. Additionally, the firm resumes of Levi & Korsinsky LLP and Shindler Anderson Goplerud & Weese PC attest to the national reputation and extensive experience of Class Counsel in the area of complex class litigation. *See* Joint Decl. of Class Counsel, ¶ 27. This case was contested, and the resolution reflects Class Counsel's skill and experience. Class Counsel successfully opposed Defendant's motion to dismiss; developed the case through intense pre-litigation investigation, written discovery, and a corporate representative deposition.

***(iv) Class Counsel Spent Considerable Time and Effort Litigating this Case***

Consideration of the efforts and time expended by Class Counsel establishes that the requested fee is reasonable. Class Counsel dedicated significant time and resources before and since this Action was initiated. As discussed herein and in the accompanying Joint Declaration of Class Counsel, the litigation has been hard-fought, entailing substantial and time-consuming investigation, research, document review, discovery, and settlement negotiations. Specifically, Class Counsel performed an extensive and detailed investigation of the facts supporting Plaintiffs' allegations—facts which require intensive forensic analysis of backend website communications, requiring highly specialized skills to identify individual network transmissions among hundreds to determine whether such internet communications violated the privacy of Plaintiffs and the class members—and of the defenses available to Defendant, which are equally complex to the extent that a large variety of factors can complicate issues of class certification and the merits of these kinds of cases.

Class Counsel also drafted the complaint advancing Plaintiffs' claims, engaged in written discovery and a corporate representative deposition, reviewed the data and documents produced by Defendant, prepared a written mediation statement and participated in a full-day mediation, engaged in further settlement negotiations with Defendant's Counsel, and worked with the Settlement Administrator to implement the Court-approved notice plan. See Joint Decl. of Class Counsel at ¶¶ 28-29. Clearly, Class Counsel have been fully committed to the prosecution of this Action and have devoted substantial time and resources to this Action. All work performed by Class Counsel was necessary, performed without duplication, and successfully advanced this litigation toward Settlement. As such, the effort and time expended by Class Counsel in navigating the complex legal and factual issues presented in this litigation supports the requested fee.

***(v) To Date, No Class Member Has Objected to the Settlement***

As set forth above, Class Counsel have received no objection to their fee request. The absence of objections supports approval of Class Counsel's fee request. *See Krueger*, 2015 WL 4246879, at *2 ("This Court finds the lack of any objections to be a sign of the Class's support for Class Counsel's Application."); *In re Xcel Energy*, 364 F. Supp. 2d at 1002 ("No member of the ERISA class objected to . . . the request for attorney fees . . . This silence can be read as an endorsement of the results received and the services rendered by plaintiffs' counsel.").

***(vi) The Percentage Requested Is Consistent with Fee Awards in Similar Cases***

Class Counsel's fee request of one-third of the total value of the settlement is in line both with fee awards in common fund cases within this Circuit and with awards in ERISA class litigation in courts across the country. Indeed, "a one-third fee is a common benchmark in private contingency fee cases," and "with high-risk and high-cost cases such as this, contingency fee arrangements are the 'key to the courthouse' for individuals taking on a large corporation." *Tussey*, 2019 WL 3859763, at *4 (quoting Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in

Class Action Settlements: An Empirical Study, 1 J. OF EMPIRICAL LEGAL STUD. 27, 35 (2004)).

Federal courts, including those in the Eighth Circuit, regularly approve fee awards of 33% in complex contingency cases involving significant risk. *See Tussey*, 2019 WL 3859763, at *4 (33 1/3% fee award); *Dennard v. Transamerica Corp.*, 2016 WL 6471254, at *1 (N.D. Iowa Oct. 28, 2016) (33 1/3% fee award); *Krueger*, 2015 WL 4246879, at *1–3 (33 1/3% fee award); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159, at *3 (N.D. Iowa Nov. 9, 2011) (36% fee award); *Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (35.5% fee award); *In re E.W. Blanch Holdings, Inc. Securities Litig.*, 2003 WL 23335319, at *3 (D. Minn. June 16, 2003) (33 1/3% fee award); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F.Supp. 280, 286 (D. Minn. 1997) (33 1/3% fee award); *Huyer*, 849 F.3d at 400(38% fee award).

**c) Lodestar Cross-Check**

While not required, the Court may perform a lodestar analysis "to double-check the result of the 'percentage of the fund' method." *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). A cross-check further underscores the reasonableness of Class Counsel's requested fee of $3,166,666.66, given that the amount requested is roughly equal to the nearly $1.1 million that Class Counsel would be entitled to if the lodestar analysis were used without applying a multiplier.

Under the lodestar methodology, "the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Keil*, 862 F.3d at 701 (citation omitted). As of July 25, 2025, Class Counsel has expended nearly 1,491 hours of attorney and staff time prosecuting this matter. *See* Joint Decl. of Class Counsel at ¶36-37.

**4) <u>CLASS COUNSEL ARE ENTITLED TO BE REIMBURSED FOR THEIR REASONABLE LITIGATION EXPENSES.</u>**

Under Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). The Settlement Agreement provides for Class Counsel's costs in connection with this Action to be reimbursed out of the common fund. Settlement Agreement at ¶ 41. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re Iowa Ready-Mix Concrete*, 2011 WL 5547159, at *4; *see also Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1084 (D. Minn. 2009)Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). The Settlement Agreement provides for Class Counsel's costs in connection with this Action to be reimbursed out of the common fund. Settlement Agreement at ¶ 41. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re Iowa Ready-Mix Concrete*, 2011 WL 5547159, at *4; *see also Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1084 (D. Minn. 2009)Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). The Settlement Agreement provides for Class Counsel's costs in connection with this Action to be reimbursed out of the common fund. Settlement Agreement at ¶ 41. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re Iowa Ready-Mix Concrete*, 2011 WL 5547159, at *4; *see also Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1084 (D. Minn. 2009)Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). The Settlement Agreement provides for Class Counsel's costs in connection with this Action to be reimbursed out of the common fund. Settlement Agreement at ¶ 41. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re*

*Iowa Ready-Mix Concrete*, 2011 WL 5547159, at *4; *see also Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1084 (D. Minn. 2009) ("The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation." (citation omitted)).

Expenses that are reimbursable from a common fund include many litigation expenses beyond the "narrowly defined 'costs' recoverable from an opposing party under Rule 54(d)," and include, inter alia, "expert fees; travel; long-distance and conference telephone; postage; delivery services; and computerized legal research." *Tussey I*, 2019 WL 3859763, at *5; *see also Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 1:15-cv-02062, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019) ("It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation." (citation omitted)); *In re Iowa Ready-Mix Concrete*, 2011 WL 5547159, at *4 (approving reimbursement for $911,455.92 in litigation expenses that include "expert fees, computerized research fees, document and data management costs, travel and lodging expenses, copying costs, the cost of court reporters and deposition transcripts, and filing fees").

Here, Class Counsel incurred $ 41,559.88 in expenses in connection with this Action. These expenses include those related to the corporate representative deposition, the hearing on Defendant's motion to dismiss, mediation, filing and court fees, and travel and associated costs for transportation and hotels, all of which represent expenses directly related to the prosecution of this Action. *See* Joint Decl. of Class Counsel at ¶ 35. Settlement Class Members were advised in the Notice that Class Counsel would be seeking reimbursement of out-of-pocket litigation expenses, and, to date, no Settlement Class Members have objected to Class Counsel's request for reimbursement of litigation expenses. *See* Declaration of Melissa Baldwin of RG/2 Claims Administration LLC in Connection with Final Approval of Settlement (submitted with Plaintiff's Motion for Final Approval) at ¶ 14.

Accordingly, Class Counsel respectfully request reimbursement for these reasonable expenses as part of the requested fee award.

**5) <u>SETTLEMENT CLASS REPRESENTATIVES ARE ENTITLED TO SERVICE AWARDS.</u>**

The Court may, in its discretion, authorize incentive awards to class representatives for their service to the class out of the common fund. *See, e.g.*, *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) ("Courts routinely recognize and approve incentive awards for class representatives.") (collecting cases). "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Under this well-established approach, awards to the Class Representatives are plainly appropriate here.

The relevant considerations in determining whether to grant an incentive award to named plaintiffs include the actions plaintiffs took to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort plaintiffs expended in pursuing the litigation. *Koenig v. U.S. Bank*, 291 F.3d 1035, 1038 (8th Cir. 2002); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002). These considerations support an incentive award in the requested amount of $2,500for each of the Class Representatives.

Here, Plaintiffs here devoted substantial time and accepted burdens far beyond those of absent class members. Plaintiffs specifically devoted time in the oversight of, and participation in, the litigation on behalf of the Class. Specifically, Plaintiffs' efforts included: (1) initial factual investigation, including making themselves and their computers available for Class Counsel to perform analysis necessary to discover the allegations in this case and providing information to Class Counsel required to demonstrate their adequacy as class representatives and collecting documents; (2) reviewing the complaint; (3) working with Class Counsel concerning case developments and discovery; (4) participating in the mediation process; and (5) reviewing and discussing the terms of the Settlement reached in this case and ultimately approving the Settlement.

*See* Joint Decl. of Class Counsel at ¶ 39. A $2,500 award per representative is well within the range approved in similar VPPA settlements. See *Braun v. Phila. Inquirer, LLC,* 2025 U.S. Dist. LEXIS 85786, *38 (E.D. PA. May 6, 2025)(Awarding $5,000 service award to named class representatives in VPPA settlement); *Feldman v. Star Tribune Media Co. LLC*, 2024 U.S. Dist. LEXIS 106591, *23 (D. Minn. June 17, 2024) (finding $5,000 service award reasonable in a VPPA settlement); *Stark v. Patreon, Inc.,* 2025 U.S. Dist. LEXIS 107441, *35-36 (N.D. Cal. June 5, 2025)(Finding $7,500 service award to named plaintiffs who provided depositions and $5,000 service award to remaining named plaintiffs to be reasonable in VPPA settlement); *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F.Supp.3d 904, 949 (N.D. Ill. July 28, 2022)(finding service award of $2,500 to named plaintiffs to be reasonable and appropriate in VPPA settlement). Consequently, the requested service award of $2,500 to Plaintiffs are appropriate and should be approved.

**6) CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that the Court award Class Counsel attorneys' fees of one-third of the Settlement Fund, or $3,166,666.66, award Class Counsel reimbursement of litigation expenses in the amount of $41,559.88, and award Service Awards of $2,500 each for the Settlement Class Representatives.

Dated: July 25, 2025

**LEVI & KORSINSKY, LLP**

By: /s/ Mark S. Reich
Mark S. Reich*
Gary S. Ishimoto*
33 Whitehall Street, 17th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: gishimoto@zlk.com

J. Barton Goplerud
Brian O. Marty
**SHINDLER, ANDERSON, GOPLERUD & WEESE, P.C.**
5015 Grand Ridge Drive, Suite 100

West Des Moines, IA 50265
Tel: (515) 223-4567
Fax: (515) 223-8887
Email: goplerud@sagwlaw.com
Email: marty@sagwlaw.com

*admitted *pro hac vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel listed of record.

By: /s/ Mark S. Reich
Mark S. Reich