IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| BRITTANY STOUDEMIRE, AMANDA VOSE, LUCINDA JACKSON, DANA FOLEY, DOUGLAS CASTLE, and BARBARA GRAZIOLI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LEE ENTERPRISES, INC.,<br><br>Defendant. | 3:22-cv-00086-SHL-SBJ<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS** |

Plaintiffs, individually and on behalf of a putative class, sued Defendant for alleged violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, et seq. (ECF 1.) On July 20, 2023, the Court denied Defendant's Motion to Dismiss. (ECF 33.) The parties then engaged in discovery and settlement discussions, culminating in an agreement to resolve the case on a class-wide basis. On April 14, 2025, the Court certified a class and granted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. (ECF 54.) Plaintiffs seek final approval of the settlement agreement, as well as an award approving their attorneys' fees, litigant expenses, and service awards. (ECF 58.) After reviewing all relevant factors, the Court GRANTS final approval of the settlement agreement and Plaintiffs' Motion for Attorneys' Fees, Litigation Expenses, and Service Awards.

## I.    LEGAL ANALYSIS: FINAL APPROVAL OF SETTLEMENT.

Court approval is required for a class-wide settlement. Fed. R. Civ. P. 23(e). The approval process involves two stages. First, the Court conducts preliminary review of the settlement agreement. *Id*. If the Court concludes it likely will approve the agreement, it must "direct notice [of the settlement] in a reasonable manner to all class members who would be bound by the proposal." *Id.* Second, after notice has been provided, and "[i]f the proposal would bind class members," the Court must hold a final approval hearing to determine whether the agreement is "fair, reasonable, and adequate" under factors set forth in Fed. R. Civ. P. 23(e)(2).

"A settlement agreement is 'presumptively valid.'" *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (quoting *Little Rock Sch. Dist. v.*

*Pulaski Cnty. Special Sch. Dist. No. 1,* 921 F.2d 1371, 1391 (8th Cir.1990)). "That said, preliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement." *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013). Instead, under Fed. R. Civ. P. 23(e), "the district court acts as a fiduciary, serving as a guardian of the rights of absent class members." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). In determining whether to approve a class settlement, the Court must consider the factors set forth in Fed. R. Civ. P. 23(e)(2), which include whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) the agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Id.*

In the course of evaluating these factors, the Eighth Circuit has directed district courts to consider: "(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (quoting *In re Uponor*, 716 F.3d at 1063). "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Id.* (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). The Court may not unilaterally modify a proposed settlement agreement, but it may advise the parties that it will not approve a proposed settlement until certain modifications are made. *Evans v. Jeff D.,* 475 U.S. 717, 726–27, (1986); *see also Rawa v. Monsanto Co.*, 934 F.3d 862, 871 (8th Cir. 2019) (same).

After considering the factors set forth in Eighth Circuit precedent and Fed. R. Civ. P. 23(e)(2), the Court finds that the settlement is "fair, reasonable, and adequate." The Court is

confident that the class representative and class counsel have adequately represented the class. There is no indication that any conflicts of interest or other deficiencies have arisen in counsel's representation of the class. Similarly, the record shows the proposal was negotiated at arm's length. In some circumstances, such as when parties present a settlement for court approval before meaningful litigation has occurred, concerns develop that the agreement might be the product of collusion—i.e., the defendant might be paying off plaintiff's counsel to free itself from liability without providing meaningful value to the class. *See Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017) ("The court's role in reviewing a negotiated class settlement is . . . to ensure that the agreement is not the product of fraud or collusion . . . .") (quoting *Marshall*, 787 F.3d at 509); *see also Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1169 (5th Cir. 1978) (holding class interests must not be "wrongfully compromised, betrayed, or 'sold out'"). Here, however, the parties did not reach settlement until after litigating the motion to dismiss and engaging in discovery. Moreover, the value of the settlement is tangible.

Turning to the merits, the Court concludes that both sides have meaningful risk if litigation continues. The VPPA was enacted long before social media companies began using algorithms and cookies to interact with consumers, and for a very different reason. Accordingly, Defendant has a plausible argument that the VPPA was not meant to apply in circumstances like those presented here. Conversely, however, the Court already denied Defendant's Motion to Dismiss, thus illustrating the viability of Plaintiffs' theory of recovery. Further discovery and litigation might not redefine the governing legal issues in any material way, and thus the ruling on the motion to dismiss effectively might have become the ruling on the case, period. The multimillion-dollar settlement fund therefore grants relief to Plaintiffs (and the class) and finality to Defendant in a scenario where both sides could end up worse off through additional litigation. Moreover, the settlement avoids the delay attendant to litigation and results in meaningful changes to how Defendant handles operation of pixel technology on its website. Finally, there have been no objections to the settlement agreement despite notice having been provided to almost 100% of the class members. This confirms that the settlement is fair, reasonable, and adequate for purposes of Fed. R. Civ. P. 23(e)(2).

## II.     LEGAL ANALYSIS: MOTION FOR ATTORNEYS' FEES.

Class counsel requests attorneys' fee in the amount of one-third of the settlement fund plus reimbursement of out-of-pocket expenses of $41,559.88. (ECF 58-3, p. 6.) The Court has

discretion whether to apply a lodestar or percentage-of-the-fund method when assessing the reasonableness of a fee request. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996). When employing the percentage of the fund method, district courts determine whether the requested percentage is "in line with other awards in the Eighth Circuit." *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016), *aff'd sub nom. Huyer v. Njema*, 847 F.3d 934 (8th Cir. 2017), and *aff'd sub nom. Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017). Even when the percentage method is applied, district courts often verify the reasonableness of an award under the lodestar approach. *Petrovic*, 200 F.3d at 1157. Courts in the Eighth Circuit "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005). An award of 36 to 38% of the common fund is not unreasonable *per se* but "on the high end of the typical range." *Buckley*, 849 F.3d at 399; *see also In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award of 36% in class action settlement).

"The Eighth Circuit has not established factors that a district court must consider when awarding fees under the percentage-of-the-fund method, however, some cases have relied on the twelve-factor test from *Johnson v. Georgia Highway Express,* 488 F.2d 714, 719–20 (5th Cir.1974)." *Huyer*, 314 F.R.D. at 628–29; *see also Zoll v. E. Allamakee Cmty. Sch. Dist.*, 588 F.2d 246, 252 (8th Cir. 1978) (acknowledging the Eighth Circuit has "expressly approved" the *Johnson* factors). These factors include:

1. The time and labor required,
2. The novelty and difficulty of the question,
3. The skill requisite to perform the legal services properly,
4. The preclusion of other employment due to acceptance of the case,
5. The customary fee,
6. Whether the fee is fixed or contingent,
7. Time limitations imposed by the client or the circumstances,
8. The amount involved and the results obtained,
9. The experience, reputation, and ability of the attorneys,
10. The undesirability of the case,
11. The nature and length of the professional relationship with the client, and
12. Awards in similar cases.

*Zoll*, 588 F.2d at 252 n. 11. The Court need only apply relevant *Johnson* factors, not all twelve. *Huyer*, 314 F.R.D. at 629.

These factors weigh in favor of approving the attorneys' fee request. Plaintiffs' counsel has spent roughly 1,500 hours to date (inclusive of paralegal time) litigating and resolving the case, which is a substantial expenditure of time and labor. The case involved difficult issues revolving around how to apply a 1980s-era statute to modern social media technology, not to mention the procedural complexity attendant to any class action. Plaintiff's counsel ultimately obtained a multimillion-dollar settlement to which no one objected; meanwhile, more than 30,000 claims forms have been submitted to date from class members wishing to have their share of the settlement fund. (ECF 58-4, ¶ 22.). Finally, attorneys' fees in the amount of one-third of the settlement fund have been awarded in similar circumstances. For these reasons, among others, the Court will award the fee in the requested amount.

Class counsel also requests reimbursement of $41,559.88, which includes filing fees, travel, court reporter fees, expert witnesses, postage, mediation, and similar expenses. (ECF 58-4, ¶ 35.) "Courts have discretion to reimburse for expenses such as travel, photocopying, computer legal research, postage, and consulting and expert witness fees." *Mergens v. Sloan Valve Co.*, No. CV1605255SJOSKX, 2017 WL 9486153, at *12 (C.D. Cal. Sept. 18, 2017). The Court is satisfied, after reviewing class counsel's itemization of expenses, that the expenses described are appropriate. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (holding expenses are "properly chargeable to the Settlement fund" only when they "are the type for which the 'paying, arms' length market' reimburses attorneys"). The Court therefore will award $41,559.88 in expenses.

Finally, the Court will grant Plaintiffs' request for a service award of $2,500 to each named Plaintiff. This award is reasonable given their "substantial action to step forward and pursue the present litigation." *Jones v. Casey's Gen. Stores, Inc.*, 266 F.R.D. 222, 231 (S.D. Iowa 2009) (approving class representative award).

## III.    CONCLUSION.

For reasons set forth above, the Court GRANTS Plaintiffs' request for final approval of the settlement agreement. (ECF 58.) The Court further GRANTS Plaintiffs' request for final approval of the fee award of one-third of the settlement fund plus expenses in the amount of

$41,559.88. Finally, the Court GRANTS Plaintiffs' request for a service fee award of $2,500 to each named Plaintiff.

       **IT IS SO ORDERED.**

       Dated: August 14, 2025

                            STEPHEN H. LOCHER
                            U.S. DISTRICT JUDGE